[No. E009571. Fourth Dist., Div. Two. Mar. 10, 1992.]

In re ISSAC J. et al., Minors, on Habeas Corpus.

**COUNSEL**

Ellen Geis and Cheryl A. Geyerman for Petitioner.

No appearance for Respondent.

William Bud Walls II, for Minors.

**OPINION**

**DABNEY, Acting P. J.**—As will be discussed more fully below, we dismissed petitioner Joseph A.'s appeal from a judgment declaring his minor

children free from his custody. He then filed the instant petition for a writ of habeas corpus in which he seeks to have his appeal reinstated or, in the alternative, to raise certain issues afresh in a collateral attack on the judgment rendered by the trial court. For the reasons set forth in this opinion, we deny all relief and discharge the order to show cause previously issued.

Although, in light of our resolution, we need give no extensive recitation of the facts of the case, the procedural history must be set out in some detail. On April 1, 1988, Sherry Lynn T., the mother of the minor children (Mother) filed a petition to have Issac and Cassi declared free from the custody and control of Joseph A. (Father). It was alleged that Father had not contacted the children since July 1, 1985, and had not provided for their support, and that these omissions were done with the intent to abandon. Father responded in propria persona, asserting that Mother had actually concealed the children from him. It appears that Father filed a complaint with the district attorney, alleging that Mother and her husband, Steven T., were unlawfully interfering with his visitation rights under a dissolution decree, which he then began attempting to enforce.

After the preparation of a report by the probation officer, and referral of Father to a psychologist, a 12-day trial was held at which Father was represented by appointed counsel, Timothy Guhin. The issue of abandonment was tried first, and although the testimony of Father and Mother was in sharp conflict, the trial court found that Father had made no serious efforts to contact the children during the period from July of 1985, until the petition was filed, and further found the intent to abandon. (Civ. Code, § 232, subd. (a)(1).)

The hearing then proceeded to a determination of whether the children's best interests required a termination of the parent-child relationship. (Civ. Code, § 232, subd. (b).) Although both sides presented expert psychological testimony, the trial court found that of Mother's expert, Dr. William Nelson, more persuasive. Dr. Nelson testified, in essence, that Father had serious personality and psychological defects amounting to a "severe mental disorder." He also testified that the children were afraid of their father, and that even visitation, at the present time, would be detrimental. His conclusion was that the best interests of the children required a stable family unit such as they were currently enjoying.

The court announced its findings on February 23, 1989, although the judgment was not filed until March 24, 1989. On April 14, Father filed a motion for new trial; due to other obligations (both personal and professional), counsel requested that the court continue the hearing for "as long a

period of time [as] . . . possible." As a result, the hearing was set for August 3, 1989, and then continued again to August 31. On the latter date, the motion was denied. In the meantime, notice of entry of judgment was finally served on Father on July 20, 1989.

Father filed a notice of appeal on October 11, 1989. On our own motion, we requested briefing on the issue of whether the appeal should be dismissed as untimely filed. Father, then represented by attorney James Bostwick, argued that his failure to comply with the 60-day limit of California Rules of Court, rule 39(b),[1] was excused because the trial court failed to apprise him of his right to appeal. (See rules 250 (renumbered 470 eff. Jan. 1, 1991), 251.) We ruled that, even assuming that this failure gave rise to a right to a late appeal (see *Castro* v. *Superior Court* (1974) 40 Cal.App.3d 614 [115 Cal.Rptr. 312]), Father failed to show that he was actually ignorant of his right to appeal.

Father also argued that his failure to file the notice of appeal on time was excused because the trial court did entertain his motion for a new trial, albeit erroneously,[2] thus misleading him into believing that the motion was appropriate. We noted, however, that the notice of appeal was untimely even under this theory, as it was not filed within 30 days of the denial of the motion. (Rule 3(a).) Accordingly, we dismissed the appeal by order dated January 25, 1991, and a remittitur issued on April 1, 1991.

The petition for habeas corpus with which we are now concerned was filed on June 5, 1991. Representing Father are attorneys for Appellate Defenders, Inc., which was responsible for supervising the work of attorney Bostwick on the original appeal. Attorney Ellen Geis, for Appellate Defenders, Inc., submitted an affidavit in which she averred that Attorney Bostwick had been advised to expect a motion to dismiss, and to contact the trial attorney concerning the delay in filing the notice of appeal. After we requested briefing on the issue, Mr. Bostwick told Ms. Geis that he had not contacted trial counsel, Timothy Guhin, or his client. Instead, he intended to raise the issues discussed above. Ms. Geis suggested that this argument was unlikely to succeed, and advised that Bostwick look into the factual basis for a motion pursuant to *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97]. This was not done.

Following the dismissal, Appellate Defenders, Inc., elected to pursue Father's other possible remedies because it was felt that Father had not received the effective assistance of counsel on appeal.

---

[1] All further rule references are to the California Rules of Court.

[2] The trial court has no power to entertain a motion for new trial after a judgment freeing a minor from his parent's custody under Civil Code section 232. (See Civ. Code, § 238; *In re Manuel J.* (1984) 150 Cal.App.3d 513, 520-521 [197 Cal.Rptr. 777].)

The issues presented by this petition—some explicitly, some by implication—are to a large extent intertwined. First, we must determine whether the doctrine of constructive filing under *In re Benoit, supra,* 10 Cal.3d 72 applies to judgments under Civil Code section 232. As subparts of that issue, we must decide whether the motion for new trial should be construed as a notice of appeal, and also consider the effect of the allegedly ineffective assistance of appellate counsel, which arguably resulted in an avoidable dismissal. Secondly, if the answer to the first question is in the negative and the appeal therefore cannot be resuscitated, we must decide whether Father may seek collateral relief from the judgment by way of habeas corpus.

We will discuss the factual assertions of the petition in more detail as required. We will note at this point, however, that Father represents that the stepparent adoption proceeding has been dismissed.

## I.

*Does the doctrine of constructive filing apply to judgments under Civil Code section 232? No.*

As Father recognizes, one reported case squarely addresses the above issue after the 1987 amendment to rule 39, which we discuss below, and holds that the doctrine of constructive filing does not apply in this situation.[3] (*In re A. M.* (1989) 216 Cal.App.3d 319 [264 Cal.Rptr. 666].) However, he argues both that *In re A. M.* was wrongly decided, and that, even if it is correct, it need not and should not be applied to the facts of this case.

## A.

This court held in *In re Fredrick E. H.* (1985) 169 Cal.App.3d 344, 347 [215 Cal.Rptr. 171], that the failure to file a timely notice of appeal in a proceeding under Civil Code section 232 deprived the appellate court of jurisdiction to hear the appeal. This holding was in accordance with the law generally applicable to civil cases. (See e.g., *Hollister Convalescent Hosp.* v. *Rico* (1975) 15 Cal.3d 660, 666-667 [125 Cal.Rptr. 757, 542 P.2d 1349].) However, in 1987, rule 39(a) was amended to provide that "[t]he rules governing appeals from the superior court in criminal cases are applicable to all appeals from juvenile court and any appeal in an action under Civil Code section 232, except where otherwise expressly provided by this rule or rule 39.1, *or where the application of a particular rule would be clearly impracticable or inappropriate.*" (Italics added.)

---

[3]We are aware of one case which questioned the holding in *In re A.M.* However, the opinion was depublished by order of the Supreme Court dated September 20, 1990. (*In re Baby Boy B.* (G008916).)

In criminal cases, the doctrine of constructive filing effectively extends the time in which to file an appeal otherwise governed by rule 31(a). The appellant in *In re A. M.* contended that the amendment to rule 39 therefore impliedly incorporated the doctrine of constructive filing which was applied to rule 31 by *In re Benoit, supra,* 10 Cal.3d. 72. Assuming, without deciding, that this construction was correct,[4] the court nevertheless found the doctrine inapplicable under the exception stressed above. Citing the "special need for finality in cases under section 232," and noting the danger of imperiling adoption proceedings, the court found it inappropriate to extend *In re Benoit* to appeals involving the termination of parental rights.

We agree that the doctrine of constructive filing may not be indiscriminately extended to cases involving the termination of parental rights. However, this case presents a particular situation in which the doctrine would apply to criminal cases—one that requires further discussion here.

There is, of course, a federal constitutional right to counsel in criminal cases under the Sixth Amendment to the United States Constitution. The federal right is extended to the states through the due process clause of the Fourteenth Amendment. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 339-340 [9 L.Ed.2d 799, 802-803, 83 S.Ct. 792, 93 A.L.R.2d 733].) The concept of due process as applied to the termination of parental rights may also include the right to appointed counsel.[5] (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 649-650, 101 S.Ct. 2153].)

Where there is a due process right to counsel, there is a concomitant right to the effective assistance of counsel. (See *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 135 [256 Cal.Rptr. 884].) To this extent we disagree with the contrary holding in *In re Ammanda G.* (1986) 186 Cal.App.3d 1075, 1080 [231 Cal.Rptr. 372]. It is true, as we have noted above, that in a proceeding involving parental rights, the child's interests should be given great weight. However, if counsel's ineffective representation of the parent has resulted in an inappropriate termination of the parent-child relationship,

---

[4]We have serious doubts about this assumption. Rule 39 applies other "rules" to juvenile appeals; the doctrine of constructive filing, as it now exists, is judicially created and does not rest for its effect on any of the Rules of Court. Thus, the amendment to rule 39 hardly compels the conclusion that the drafters intended to import into juvenile procedure all of the case law applicable to criminal appeals.

[5]Whether a parent is entitled to counsel as a matter of due process depends upon the extent to which counsel's assistance would be necessary, or even helpful, in presenting the parent's case. Here, it cannot be disputed that Father had a due process right to counsel. The case involved not only serious factual disputes, but also the analysis of expert psychological testimony.

the child may have an interest equal to that of the parent's in its restoration. Thus, we believe with the court in *Adoption of Michael D.*, *supra*, that the denial of effective assistance at trial is an issue properly presented to a reviewing court.

This conclusion bears on our consideration of the request for relief under *In re Benoit*, *supra*, 10 Cal.3d 72, but, as we explain, does not require that it be granted.

It is true that relief is granted to a criminal defendant in a variety of situations, one of which is the justifiable reliance on the promise of counsel that a timely notice will be filed.[6] In this situation, the attorney's inaction can usually be justly characterized as ineffective assistance, and it certainly was so in this case.[7] If, to make the guarantee of counsel genuine, a parent must be permitted to raise ineffective assistance of counsel on appeal, it may very plausibly be argued that he must be given a concomitant right to pursue his appellate rights despite his attorney's inexcusable failure to perfect the appeal in a timely fashion.

However, we cannot accept this argument for the reasons of policy discussed in *In re A. M.*, *supra*, 216 Cal.App.3d 319. In our view, this is the point at which the interests of the child and parent collide, and at which the child's interest in finality prevails.

In *Adoption of Alexander S.* (1988) 44 Cal.3d 857 [245 Cal.Rptr. 1, 750 P.2d 778], the trial court had rejected the natural mother's efforts to withdraw her consent to the adoption of the minor. She failed to appeal the judgment denying her petition to withdraw consent, but did appeal the denial, a few months later, of her petition to establish the paternity of the

---

[6]Other circumstances in which relief has been granted include the miscarriage of the mails, where a notice is timely deposited in the post (*In re Gonsalves* (1957) 48 Cal.2d 638, 646 [311 P.2d 483]); the dereliction of prison officials, when a notice is timely delivered to them for filing or mailing (*People* v. *Slobodion* (1947) 30 Cal.2d 362, 365-368 [181 P.2d 868]); and the fact that defendant has been misled or confused by words or acts of the court. (*People* v. *Martin* (1963) 60 Cal.2d 615, 617-618 [35 Cal.Rptr. 769, 387 P.2d 585].)

[7]Not only did counsel prepare a motion which the court had no jurisdiction to hear; he failed to file the notice in a timely fashion under any arguably applicable theory. See page 529, *ante*.

Father suggests that we should consider granting relief in order to minimize the deleterious professional consequences to counsel. If we are unpersuaded by the equities of Father's position, it would be unconscionable to create a rule designed solely to protect counsel's professional reputation.

alleged natural father. (Civ. Code, § 7006.) In that appeal, she raised issues relating to the adoption proceeding.[8]

The Court of Appeal recognized that it had no appellate jurisdiction to consider those claims, but elected to treat this portion of the appeal as a petition for habeas corpus and found, inter alia, that the mother had not received effective assistance of counsel in the proceedings leading to her original consent. (*Adoption of Alexander S., supra*, 44 Cal.3d at pp. 862-863.)

The Supreme Court reversed. After discussing several procedural gaffes committed by the intermediate court—including the failure to apply the rule that habeas corpus cannot serve as a substitute for appeal—it acknowledged that habeas corpus is available as a means of collateral relief, and may serve as a belated appeal, where the basis is the ineffective assistance of counsel. (*People* v. *Munoz* (1975) 51 Cal.App.3d 559, 563 [124 Cal.Rptr. 322].) However, the court then held flatly that adoption proceedings were not, in this respect, governed by the rules and principles applicable to criminal matters, and that—with exceptions not here relevant[9]—"habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action." (*Alexander S., supra*, 44 Cal.3d at pp. 867-868.)

We find no basis for distinguishing the holding here. The petition under Civil Code section 232 can reasonably be described as "adoption-related," as the purpose here was to permit adoption by the stepfather. However, we do not rest our decision on that basis, and do not create a distinction between those minors for whom adoption is imminent, those for whom it is probable, and those for whom it is merely a hope. As the United States Supreme Court stated, in refusing to recognize federal habeas corpus as a remedy in child custody matters, "[i]t is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home' . . . especially when such uncertainty is prolonged." (*Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502, 513-514 [73

---

[8]Notice of entry of the judgment denying the mother's petition to withdraw consent was entered on January 30, 1985, and became final on April 1 of that year. Notice of entry of the paternity judgment was entered on April 30, and her appeal of this judgment was timely. Thus, as in this case, there was no extended delay in presenting her claim with respect to the first judgment to the appellate court.

[9]The court described six subcategories under the general heading of cases in which the parent seeks custody of a child living with another: to enforce a right to physical custody established by court order, to determine the right to physical custody in the first instance, to modify a modifiable order for custody, to protect a child from imminent danger, where consent to adoption is required but has not been obtained, and to challenge an order made without jurisdiction. (*Alexander S., supra*, 44 Cal.3d 857-858.)

L.Ed.2d 928, 938-939, 102 S.Ct. 3231]; see also *In re A. M., supra*, 216 Cal.App.3d at p. 322.) We recognize that *In re Benoit, supra*, 10 Cal.3d at p. 78, held that habeas corpus is the proper vehicle to enforce the right of appeal. However, we follow *Alexander S.* and hold that the remedy may not be employed as an means of obtaining belated relief in proceedings under Civil Code section 232.

We concede that the result will be harsh in some cases, and may be so here. We have considered the desirability of a more flexible standard, but can formulate no rules for the applicability of such a standard under which we could confidently predict that more good would be done than harm. In reviewing an application, the appellate court would be in a poor position to evaluate the merits of the proposed appeal, or the effect of the delay on the child. In some cases, such as this one, the parent may have acted diligently and been the victim of attorney incompetence—but this should not require relief if the judgment appears sound and the child is happily placed. Nor should a dilatory parent be allowed to proceed, if the appellate court believes, on limited information, that some error occurred at trial. Further, the court is uninformed of the child's current circumstances, and cannot resolve contradictory assertions by the parties.

Recently, the court in *Mauro B.* v. *Superior Court* (1991) 230 Cal.App.3d 949 [281 Cal.Rptr. 507] rejected a putative father's efforts to seek review by writ of a judgment denying him paternal rights, where he had failed to file a timely notice of appeal. The court observed that extraordinary relief has historically been held unavailable where the remedy by appeal has been lost by neglect. (See *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370-371 [217 P.2d 951].) Although a dissenting justice argued that the neglect of counsel in failing to perfect the appeal constituted the "special circumstances" justifying extraordinary review briefly mentioned in *Adoption of Alexander S.* (44 Cal.3d at p. 865), the majority disagreed. Instead, it relied on *In re A. M.* and the special need for finality applicable to such proceedings, and rejected the petition.

The court also noted, as we have above, that the underlying facts of a case should not influence the court in determining whether to entertain such a petition. (*Mauro B.* v. *Superior Court, supra*, 230 Cal.App.3d at p. 955.) We think this rule particularly important in adoption-related proceedings. If an appellate court inaccurately evaluates the merits of a regular civil or criminal proceeding, and decides to grant extraordinary review based on this evaluation, no serious inconvenience or injustice will usually result from the delay in obtaining a final decision. However, in adoption-related proceedings, the simple fact that an apparently final judgment is placed in danger of being upset must have a deleterious effect on the child.

## B.

■ Father asks that we construe the request for new trial as a notice of appeal, under the rule of liberal construction mandated by rule 1(a). We decline to do so. Father does not cite, and our research has not disclosed, any case extending the principle so far. The crucial element specified in the rule is that a document express the party's intent to *appeal*. Where this is clear, imperfections of form, or such misdirections as addressing the document to the trial court instead of the clerk, are properly disregarded. (See *In re Gonsalves, supra*, 48 Cal.2d 638.) However, where a party seeks a new trial, he is unequivocally requesting that an error be corrected by the trial court; in most civil cases, of course, the remedy of appeal is preserved. The fact that this was not true here does not retrospectively convert the motion for new trial into a notice of appeal.

## C.

■ As noted above, Father filed this petition for writ of habeas corpus, seeking the primary relief of the reinstatement of his appeal. He also sought to raise several new issues, including the ineffective assistance of counsel at the trial itself. He argued that his original appellate counsel, Bostwick, had himself rendered ineffective assistance by failing to raise these issues, making relief by habeas corpus appropriate. In a criminal case, this approach may lead to a recalling of the remittitur even after an unsuccessful appeal, and reinstatement of the appeal with the opportunity given to raise new issues. (See *In re Smith* (1970) 3 Cal.3d 192, 202-204 [90 Cal.Rptr. 1, 474 P.2d 969].)

We answer this contention here by reference once again to *Alexander S.* An action under Civil Code section 232 is not a criminal matter, and matters of "sound public policy" require that finality prevail over the option for protracted litigation. (44 Cal.3d at p. 868.)

■ Finally, Father asks this court to reevaluate the decision of the trial court in light of the dismissal of the stepparent adoption proceeding. We believe that only in the most compelling circumstances should we exercise our power to consider the effect of postjudgment events. (See *In re Randi D.* (1989) 209 Cal.App.3d 624, 627-628 [257 Cal.Rptr. 421].) To do otherwise would rob of all finality precisely those judgments as to which certainty is most important. We reject Father's request.

McKinster, J., concurred.

TIMLIN, J.—I respectfully dissent. I would grant the petition of the petitioner/father (father) for a writ of habeas corpus so as to permit the "constructive filing" of the father's appeal in case No. E007280.

So as to place my disagreement with the majority in proper context, it is helpful to highlight certain of those portions of the majority opinion with which I fully agree:

(1) "Here, it cannot be disputed that Father had a due process right to counsel." (Maj. opn., *ante*, p. 531, fn. 5; *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 649-650, 101 S.Ct. 2153].)

(2) "Where there is a due process right to counsel, there is a concomitant right to the effective assistance of counsel. (See *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 135 [256 Cal.Rptr. 884].) . . . Thus, we believe with the court in *Adoption of Michael D., supra*, that the denial of effective assistance [of counsel] at trial is an issue properly presented to a reviewing court." (Maj. opn., *ante*, pp. 531-532.)

(3) "It is true that relief [from the late filing of a notice of appeal] is granted to a criminal defendant in a variety of situations, one of which is the justifiable reliance on the promise of counsel that a timely notice [of appeal] will be filed. In this situation, the attorney's inaction can usually be justly characterized as ineffective assistance, and it certainly was so in this case. If, to make the guarantee of counsel genuine, a parent must be permitted to raise ineffective assistance of counsel on appeal, it may very plausibly be argued that he must be given a concomitant right to pursue his appellate rights despite his attorney's inexcusable failure to perfect the appeal in a timely fashion." (Maj. opn., *ante*, p. 532, fns. omitted.)

With all of the above in mind, I turn now to the basis of my disagreement with the majority's conclusion that a constructive filing of the father's appeal should not be allowed.

It was, of course, our Supreme Court's opinion in *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97] (hereinafter referred to simply as *Benoit*) which first extended the doctrine of "constructive filing," on the basis of ineffective assistance of counsel, to late-filed criminal appeals. *Benoit* did not countenance the indiscriminate application of the constructive filing doctrine to all criminal cases in which it could be argued that there had been "ineffective assistance of counsel" in failing to file a timely notice of appeal. Rather, *Benoit* limited the application of the constructive filing doctrine to those situations where the late filing of the notice of appeal

occurred in the context of (a) the justifiable reliance of the defendant on his or her attorney to timely file a notice of appeal, (b) the due diligence of the defendant in assuring himself or herself that a notice of appeal was being timely filed, and (c) the ineffective assistance of counsel in nevertheless failing to timely file such a notice. (*Benoit*, at pp. 86-89.) It is the constructive filing doctrine, as specifically limited and applied by *Benoit*, that the father seeks to have applied to this case.

### A: Incorporating the Benoit Constructive Filing Doctrine Into Procedural Rules for Free From Custody Cases.

The primary "hurdle" to be crossed by the father in making his argument is the fact that *Benoit* applies to criminal cases and this is not a criminal case—it is a "free from custody" case brought under Civil Code section 232 et seq. (hereinafter referred to as an FFC case). Both the majority and the father seem to concur—quite rightly, I think—that, if this "hurdle" is to be overcome at all, it must be overcome by use of rule 39(a) of the California Rules of Court.[1] It must first be determined, then, whether rule 39(a) can be applied in such a way as to "transport" the *Benoit* constructive filing doctrine to FFC cases. Rule 39(a) states, in pertinent part: "The rules governing appeals from the superior court in criminal cases are applicable to all appeals from the juvenile court and any appeal in an action under Civil Code section 232, except where otherwise expressly provided by this rule or rule 39.1, or where the application of a particular rule would be clearly impracticable or inappropriate." The 60-day statute of limitations for filing notices of appeal in criminal cases set forth in rule 31(a), then, applies as well to FFC cases. So too, the argument goes, the *Benoit* constructive filing doctrine, to the extent that it qualifies the 60-day time limit of rule 31(a), must also apply in FFC cases. There are two positions which are maintained, to a greater or lesser degree, by the majority in rejection of this argument that the *Benoit* constructive filing doctrine applies in FFC cases by virtue of the operation of rule 39(a):

(1) First, the majority notes that rule 39(a) applies only to "rules," while the *Benoit* constructive filing doctrine is only a judicially created doctrine. The majority professes to have "serious doubts" as to whether rule 39(a) applies to anything other than actual procedural rules of the California Rules of Court—preferring, apparently, a somewhat literalistic interpretation of the word "rules" in rule 39(a). I have no such doubts. Rule 31(a) does not exist in a vacuum; it, like all other procedural rules, has come to have a *particular* meaning, in the context of its application, by virtue of its interpretation and application *in actual cases*. "Rule 31(a)" *means* "rule 31(a) of the California

---

[1] All further references to "rules" are references to the California Rules of Court.

Rules of Court as it has been interpreted and applied." Since our Supreme Court issued its opinion in *Benoit*, rule 31(a) has been understood as being qualified by a constructive filing exception in certain situations concerning the ineffective assistance of counsel. It is *this* "rule 31(a)," the qualified rule, which is made applicable to FFC cases by rule 39(a)—unless the application of the rule, as qualified, "would be clearly impracticable or inappropriate." This "unless" provides the basis of the majority's second position taken in rejection of the argument that the *Benoit* constructive filing doctrine should apply in FFC cases.

(2) The majority finds, on policy grounds, that a minor's interests in the finality of FFC proceedings outweigh a parent's interests in being able to obtain a full and fair adjudication of the termination of his or her parental relationship with that minor and, on the basis of that finding, concludes that it would be impracticable or inappropriate (to use the language of rule 39(a)) to permit the application of the *Benoit* constructive filing doctrine in FFC cases.[2] It is here, on the issue of conflicting policy considerations, that I have my clearest disagreement with the majority.

I do not contest the majority's position that a minor's interest in final, stable, long-term relationships is an important one—but I cannot agree that the law, in seeking to protect a minor's interests in such relationships, should countenance an irrevocable and complete severance of a parent-child relationship on the basis of anything less than a full and fair adjudication of the grounds alleged in support of such a severance.

The United States Supreme Court has explicitly recognized that: "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. [Citations.] [¶] The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything,

---

[2]The majority cites both *In re A. M.* (1989) 216 Cal.App.3d 319 [264 Cal.Rptr. 666] and *Adoption of Alexander S.* (1988) 44 Cal.3d 857 [245 Cal.Rptr. 1, 750 P.2d 778] in partial support for its policy position. Both of these cases, however, focused their policy arguments on the need to protect the finality of *adoption* proceedings—proceedings which may, but very well may not, form a part of the overall circumstances surrounding an FFC case. The majority has rightly recognized this distinction ("[W]e do not rest our decision on . . . a distinction between those minors for whom adoption is imminent, those for whom it is probable, and those for whom it is merely a hope.") and has focused its policy argument on the general need for children to have stable, long-term relationships (Maj. opn., *ante*, p. 533, quoting from *Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502, 513-514 [73 L.Ed.2d 928, 938-939, 102 S.Ct. 3231].)

persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.⁷" The court's footnote 7 provides: "*We therefore reject respondent* ['s] . . . *claim that a parental rights termination proceeding does not interfere with a fundamental liberty interest.* [Citations.] *The fact that important liberty interests of the child and its foster parents may also be affected by a permanent neglect proceeding does not justify denying the natural parents constitutionally adequate procedures.* Nor can the State refuse to provide natural parents adequate procedural safeguards on the ground that the family unit already has broken down; that is the very issue the permanent neglect proceeding is meant to decide." (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 753-754 [71 L.Ed.2d 599, 606-607, 102 S.Ct. 1388], italics added.)

Our own Supreme Court has likewise recognized the "fundamental liberty interest" which a parent has in retaining and maintaining a parent-child relationship (*In re Laura F.* (1983) 33 Cal.3d 826, 844 [191 Cal.Rptr. 464, 662 P.2d 922]) and has also recognized that constitutional principles of due process serve to protect this fundamental liberty interest under both the federal and the state Constitutions (*In re Malinda S.* (1990) 51 Cal.3d 368, 383, fn. 17 [272 Cal.Rptr. 787, 795 P.2d 1244]). In short: "The fundamental and crucial right to 'conceive and to raise one's children' is protected by due process guarantees. [Citations.] '[T]he interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights [citations], [and] the state, before depriving a parent of this interest, must afford him adequate notice and an opportunity to be heard.' [Citations.]" (*In re Brendan P.* (1986) 184 Cal.App.3d 910, 915 [230 Cal.Rptr. 720].) In this case, of course, "an opportunity to be heard" includes a fair opportunity to be heard *on appeal.*

Thus, in my view, there are no compelling policy arguments that suggest that it would be "impracticable or inappropriate" to apply a constructive filing doctrine in FFC cases and, consequently, I view rule 39(a), as qualified by *Benoit*, as requiring the application of that doctrine in such cases. As I discuss below, the *Benoit* constructive filing doctrine, if properly construed and applied, would not inappropriately impinge on a minor's interest in the finality of FFC proceedings.

*B: Raising and Applying the Benoit Constructive Filing Doctrine in FFC Cases.*

The majority has relied at least in part on the following statement taken from *Adoption of Alexander S., supra,* to support its conclusion that a petition

for a writ of habeas corpus should not be granted in this case: "[W]e hold that habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment." (44 Cal.3d, at pp. 867-868.) Assuming, arguendo, that FFC cases can be characterized as "adoption-related," I still do not see that the statement has any relevance to the matter at hand. In *Adoption of Alexander S.*, the petition for a writ of habeas corpus was made in a situation in which no appeal had ever been taken—that is, the petition for the writ was made *in lieu* of an appeal (constituting an attempt to mount a *collateral* attack on a judgment). Here, the father does not seek to *collaterally* attack the FFC judgment entered below in case No. E007280, nor does he argue that his petition should substitute for a proper notice of appeal: To the contrary, an appeal (although belated) *was* taken by the father in this case—and the writ is merely being sought to *preserve* that appeal (thus constituting an attempt by the father to maintain a *direct* attack on the FFC judgment).[3]

Such a use of a writ of habeas corpus is clearly proper. As stated in *Benoit*: "We observe at the start that '[i]n the absence of another adequate remedy, habeas corpus lies to' . . . determine that an appeal is pending and to effect preparation of the record so as to perfect the appeal. [Citations.]" (10 Cal.3d at p. 78.) It is true that this court traditionally has required the use of a separate motion to request permission for a late filing under the *Benoit* constructive filing doctrine—but, to the extent that this court might insist on calling such a motion "another adequate remedy," it would be a simple enough task to construe a petition for a writ of habeas corpus as such a motion. (See *In re Arthur N.* (1974) 36 Cal.App.3d 935, 937 [112 Cal.Rptr. 89].)

Once it has been established that a cognizable request for permission to file a late appeal has been made, it remains to review such a request. The standards by which to review a request for permission to file a late appeal are suggested by *Benoit*. As I alluded to previously, *Benoit* suggests that a constructive filing of an appeal (based on ineffective assistance of counsel) should only be allowed when the request for permission to make such a filing shows (a) justifiable reliance by the appellant on counsel to file the notice of appeal, (b) due diligence by the appellant in assuring himself or herself that counsel was, in fact, proceeding to file the notice of appeal, and (c) the ineffective assistance of counsel in nevertheless failing to file the notice of appeal in a timely fashion. The showing made by a petitioner as to these three factors constitutes the basis on which an appellate court should

---

[3]For the same reason, *Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949 [281 Cal.Rptr. 507] (as cited by the majority) is also inapposite.

determine, in the exercise of its discretion, whether to allow a late filing of an appeal in an FFC case pursuant to the *Benoit* doctrine.

Use of the above three factors by an appellate court has several salutary effects:

(1)   Requiring a showing of "justifiable reliance" would deny the privilege of a late filing to those who merely "assumed" that counsel would pursue an appeal of the judgment. A proper showing of "justifiable reliance" would include a showing of an affirmative act by the appellant to obtain counsel's services in pursuing an appeal as well as some showing of an affirmative response by counsel that he or she would pursue an appeal (at least to the extent of filing a notice of appeal).

(2)   Requiring a showing of "due diligence" on the part of the appellant would deny the privilege of a late filing to those who merely told their counsel to file an appeal and then "forgot about it." A parent wishing to contest the validity of a judgment in an FFC case must continue to bear some personal responsibility for assuring counsel's compliance with the requirements of the law. If a parent has been properly advised of his or her rights to appeal as well as "the necessary steps and time for taking an appeal" pursuant to *In re Jacqueline H.* (1978) 21 Cal.3d 170 [145 Cal.Rptr. 548, 577 P.2d 683], at page 179, then it is entirely appropriate that a somewhat more stringent showing of "due diligence" be required. It is also arguable that, if a parent knows, or should know, of a pending adoption, a somewhat more stringent showing of "due diligence" likewise be required.

(3)   Requiring the appellate court to base its determination on the above three *Benoit* factors focuses the court's attention on the precise issue at hand—whether a late filing should be allowed so as to protect the fundamental constitutional interests of the appealing party—without calling for a preliminary examination into the equities or competing policy considerations raised by the overall circumstances surrounding the particular FFC case subject to appellate review.[4]

---

[4]By making this point, I am not lightly brushing aside "competing policy considerations"—such as a minor's interest in the finality of FFC proceedings. Rather, by making this point, I am urging that the reviewing court focus on the fact that it is being asked to treat this appeal *as if* it had been *timely* filed—and no one contests the fact that a minor's interest in the finality of FFC proceedings must be subrogated to the processing of a *timely* appeal taken in an FFC case.

Further, I take strong issue with the suggestion in the majority opinion that in determining whether to allow a constructive late filing in an FFC case an appellate court would become enmeshed both in evaluating the soundness of the underlying FFC judgment and in determin-

### C: Application of the Benoit Doctrine in This Case.

The facts of this case, as shown in the appellate record before us as well as in the petition for a writ of habeas corpus, clearly reveals the father's entitlement to a late filing of his appeal in this case:

(1) The father never received an "*In re Jacqueline H.* advisement" by the court—and, so, was left without any direct, personal knowledge of the law respecting the taking of appeals. The father clearly communicated to his trial counsel his desire to appeal the FFC judgment. Trial counsel assured the father that all appropriate steps were being taken to contest the FFC judgment, including the taking of an appeal.

(2) The father continued to impress upon trial counsel his desire to contest the FFC judgment. The father was aware that trial counsel was filing a motion for a new trial prior to filing a notice of appeal—and had been told by trial counsel that this was the appropriate manner in which to pursue the matter.

(3) Trial counsel erred in believing that a motion for a new trial was permissible in an FFC case (Civ. Code, § 238). Trial counsel never filed a notice of appeal in a timely fashion.

Under the above facts, the conclusion is inescapable that the father's fundamental rights in and to a full and fair adjudication of the FFC case in which his rights as a father were completely and irrevocably terminated were eviscerated by the ineffective assistance of trial counsel. Basic considerations of fairness and due process compel the application of the *Benoit* doctrine in this case—and competing policy considerations which recognize a minor's interest in stable, long-term relationships do not compel a contrary result.

To adopt a blanket, "across-the-board" holding, as the majority does, that the *Benoit* constructive filing doctrine simply does not, ever, apply to late-filed appeals in FFC cases where the late filing of the appeal is attributable to the professional incompetence of an appellant parent's counsel would (1) severely (and, to a large degree, needlessly) undermine that appellant parent's constitutionally protected "fundamental liberty interest" in the basic human rights to conceive and raise children and (2) deprive that appellant parent of his or her constitutional right to receive the full appropriate measure of the due process of law in contesting the termination of his

---

ing the "desirability" of the minor's current placement. These considerations have no relevance to whether, in a particular case, an appellant's right to appeal was foreclosed by the dereliction of his or her counsel.

or her parental rights. In my view, an ad hoc, "case-by-case" approach to applying the *Benoit* constructive filing doctrine in FFC cases respects and preserves these fundamental constitutional rights held by parents without unduly prejudicing the interest of children (and of society) in seeing that children enjoy the benefits of stable, long-term relationships while growing up.

Petitioner's application for review by the Supreme Court was denied May, 14, 1992, Kennard, J., was of the opinion that the application should be granted.