[No. D014366. Fourth Dist., Div. One. July 20, 1992.]

In re ARTURO A., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
VERONICA A., Defendant and Appellant.

## Counsel

Michaela C. Curran, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley and Susan Strom, Chief Deputy County Counsel, and Terri L. Richardson, Deputy County Counsel, for Plaintiff and Respondent.

John A. Don, under appointment by the Court of Appeal, for Minor.

## Opinion

**FROEHLICH, J.**—In *In re Amanda B.* (1992) 3 Cal.App.4th 935 [4 Cal.Rptr.2d 922], we ruled that review of an order terminating reunification services and referring the case to a Welfare and Institutions Code[1] section 366.26 selection and implementation hearing must be undertaken by petition for extraordinary writ, and cannot be mounted as an appeal from the later judgment rendered at the selection and implementation hearing. Our ruling on the motion to dismiss the appeal by mother in this case addresses the related issue of review of the same alleged error when it is packaged in the form of ineffective assistance of counsel for failing to file the timely writ petition.

### Procedural Background

Arturo, the minor child the subject of this action, was first removed from parental care in November 1988. The principal parental care problem derived from the mother's drug addiction. Following an extended period of treatment in accordance with the court-ordered reunification plan, a definitive section 366.22 review hearing (366.22 hearing) was held on August 17, 1990. The court at that time found that reasonable reunification services had been provided, that return of the minor to the mother would present a

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

substantial risk of detriment, and that there was no substantial probability the minor could be returned to mother's custody within a six-month period. The court therefore referred the case to a section 366.26 selection and implementation hearing.

Selection and implementation hearings were held on February 20, 1991, and April 22, 1991. The original hearing was continued until the later date to permit further investigation of the possibility of locating adoptive parents for the child, the court initially finding that adoption might be difficult because of Arturo's developmental handicaps. A suitable family for adoption was thereafter located, however, and accordingly at the April 22 hearing the court found Arturo to be adoptable and terminated parental rights. The appeal is taken from the judgment of April 22, 1991, which resulted from the selection and implementation hearing.

### Issues Raised by Motion to Dismiss

We view the several contentions framed by the appeal as falling into three categories. The first contention is that the procedure utilized to sever parental rights was violative of due process because it permitted severance based upon proof by a preponderance of the evidence rather than by a standard of clear and convincing evidence. The second category of contentions pertains to alleged errors committed at the 366.22 hearing which resulted in the order referring the case for the selection and implementation hearing. The third contention is that *if* either of the first two grounds for appeal be deemed nonappealable, appellant should be granted relief on the ground of ineffective assistance of counsel in terms of counsel's failing to file a timely writ petition. (Appellant was represented by appointed counsel at all hearings.)

After lodging of appellant's opening brief, respondent filed a motion for dismissal or limitation of the scope of appeal. By written order dated April 8, 1992, this court advised that it was giving serious consideration to the motion to dismiss and requested further briefing by counsel, directing counsel's attention to specific areas of inquiry, including most particularly the question of the effect of ineffective assistance of counsel in juvenile dependency proceedings. After receiving additional briefing from both counsel, oral argument was entertained.

■ The contentions raised by the appeal either pertain to questions of law or can be resolved by an inspection of the record. Accordingly, we conclude it is appropriate and in the interests of judicial efficiency to resolve this appeal by ruling on the motion to dismiss. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 512, 513, pp. 495-497.) This is particularly true in

light of the fact that this appeal is governed by new rule 39.2A of the California Rules of Court,[2] which expresses the urgent desire of this court to resolve appeals from juvenile dependency orders in an expeditious manner.

## DISCUSSION

### I. *Constitutionality of Procedure*

Appellant correctly states that the crucial decisions made at the 366.22 hearing were reached upon a finding based on a preponderance of the evidence. This finding, which resulted in a reference to a selection and implementation hearing, was that the return of Arturo to his mother would create a substantial risk of detriment to his well-being. Appellant contends the use of this standard of proof to resolve the fundamental right of parenting violates due process. Citing *Santosky* v. *Kramer* (1982) 455 U.S. 745, 748 [71 L.Ed.2d 599, 603, 102 S.Ct. 1388] and *In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198], appellant contends that this finding should have required proof by clear and convincing evidence.

This precise issue has been discussed in two cases from different districts of the Court of Appeal, both of which have been accepted for review by the Supreme Court.[3] It was also recently visited in *In re Cristella C.* (1992) 6 Cal.App.4th 1363 [8 Cal.Rptr.2d 342] and *In re Reylene A.* *(Cal.App.). No purpose would be served by an in-depth review of the subject at this time. Accordingly, for the purpose of this opinion we shall assume, without deciding, that the statute is constitutional (see 13 Cal.Jur.3d, Constitutional Law, § 63, pp. 137-141).

### II. *Appealability of Errors Committed at the Review Hearing*

Appellant seeks to challenge several rulings made at the 366.22 hearing. It is contended that there was insufficient evidence to support both the finding that reasonable reunification services were provided mother and the finding that mother was not in compliance with the reunification plan.

---

[2]All rule references are to the California Rules of Court.

[3]These are *In re Daniela M.* (1992) 3 Cal.App.4th 226 [4 Cal.Rptr.2d 290], review granted April 23, 1992 (S025571); and *Cynthia D.* v. *Superior Court* (1992) 3 Cal.App.4th 913 [4 Cal.Rptr.2d 909], review granted April 23, 1992 (S025807). In light of the present disagreement among the Courts of Appeal, and the difficulty in predicting the final resolution of this issue by the Supreme Court, we suggest that in the interest of judicial economy it would be best for trial courts, pending final resolution of the matter, to make the finding leading to a termination of parental rights by evidence which it finds "clear and convincing."

*Reporter's Note: Opinion (BO58055) deleted upon direction of Supreme Court by order dated October 29, 1992.

Error is also asserted in the court's failure to maintain proper records of the 366.22 hearing (some of the reporter's notes were lost).

These alleged errors *all* were subject to review by writ petition or appeal timely filed following the section 366.22 ruling.[4] They will not be reviewed in an appeal from the section 366.26 judgment. (*In re Amanda B., supra,* 3 Cal.App.4th 935, 941; *In re Taya C.* (1991) 2 Cal.App.4th 1, 8 [2 Cal.Rptr.2d 810]; *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 836 [278 Cal.Rptr. 185].)

III. *Ineffective Assistance of Counsel*

■ Appellant anticipates the dismissal of her appeal upon the ground of nonappealability of the issues raised, based upon the rule of section 366.26, subdivision (k) that such matters may be raised only by writ petition. If her appeal is denied on this ground, she argues, the error will have been committed by trial counsel representing appellant at the time of the 366.22 hearing, and will constitute ineffective assistance of counsel warranting reversal of the section 366.26 judgment.

■ Appellant relies on *Strickland* v. *Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052] and *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 136 [256 Cal.Rptr. 884], which define the two-part test for determining ineffective assistance of counsel. It must be shown that (1) trial counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates, and (2) had counsel rendered competent service the outcome of the hearing would have been more favorable to the client. (*Adoption of Michael D., supra,* at p. 136.)
■ As to the first prong of the test, which we may call attorney negligence, appellant notes that section 366.26, subdivision (k), which mandates review by writ, was on the books at the time of the review order. Any attorney practicing juvenile dependency law was bound to know of the requirement. If the failure to file a timely petition for review of the section 366.22 order precludes review of errors at that hearing (as we have decided above), it obviously, it is argued, deprives appellant of the opportunity of overturning an important adverse ruling, and hence is presumptively prejudicial.

---

[4]We do not here revisit the question of the proper method of seeking appellate review of section 366.22 orders. In accordance with rule 39.2A, *all* orders made in juvenile dependency proceedings may be the subject of writ review in this division of the Fourth District. We have elsewhere discussed whether the requirement of writ review for the challenge of all referral orders to a selection and implementation hearing (as provided by § 366.26, subd. (k)) should be applicable to subsidiary rulings made at the same time as the referral order. (See *In re Steven H.* (1992) 6 Cal.App.4th 1752 [8 Cal.Rptr.2d 535].) In any event, there is no question that all orders resulting from a 366.22 hearing are reviewable either by appeal or by writ.

Before attempting to rule on the precise issue before us we should briefly review the current status of the right to effective assistance of counsel in dependency proceedings. ▮ By court rule and statutory provision, indigent parents have a right to representation in dependency proceedings by appointed counsel. (§ 317, subd. (b); rule 1412(h)(1)(B).) There is also a due process constitutional right to representation by counsel on a case-by-case basis when the result of the hearing may be termination of parental rights. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 31-32 [68 L.Ed.2d 640, 652-653, 101 S.Ct. 2153]; *Cleaver* v. *Wilcox* (9th Cir. 1974) 499 F.2d 940, 945.) Such a right will depend upon the complexity of the issues presented and the likelihood that counsel might sway the outcome. (*In re Christina P.* (1985) 175 Cal.App.3d 115, 128-129 [220 Cal.Rptr. 525].)

That a parent may always be entitled to representation does not, however, answer the question as to the reversability of an order which was obtained as a result of ineffective assistance of counsel. ▮ While some doubt remains, we believe it is reasonably well established that reversal based on ineffective assistance of counsel is *not* available when the right to counsel was only statutory. (*In re Malinda S.* (1990) 51 Cal.3d 368, 384-385 [272 Cal.Rptr. 787, 795 P.2d 1244]; *In re Mary S.* (1986) 186 Cal.App.3d 414, 418-419 [230 Cal.Rptr. 726].) Where, however, the right is of constitutional dimension, the client is entitled not only to counsel but to competent assistance of counsel. "When an indigent is entitled to counsel on due process grounds the entitlement must extend to effective assistance of counsel or it will be a hollow right." (*In re Christina P., supra,* 175 Cal.App.3d 115, 129 [220 Cal.Rptr. 525], italics omitted; see also *In re James S.* (1991) 227 Cal.App.3d 930, 936 [278 Cal.Rptr. 295]; *In re Christina H.* (1986) 182 Cal.App.3d 47, 50 [227 Cal.Rptr. 41]; *In re Ammanda G.* (1986) 186 Cal.App.3d 1075, 1080 [231 Cal.Rptr. 372].)

As a general rule, therefore, to determine whether a claim for reversal may be based upon ineffective assistance of counsel, one must review the issue in litigation to determine whether the right threatened is fundamental. (*In re Justin L.* (1987) 188 Cal.App.3d 1068 [233 Cal.Rptr. 632].) In dependency hearings based upon the section 300 series as it existed before 1989, termination of parental status was not in issue. In order to achieve final termination of status it was necessary to file a new and separate proceeding under Civil Code section 232. The right to counsel in the section 300 proceedings was thus only statutory, not constitutional, and hence failure of appointed counsel to act with competence created no appealable error. (*In re Ammanda G., supra,* 186 Cal.App.3d 1075, 1080; *In re James S., supra,* 227 Cal.App.3d 930, 936.)

■ We have not as yet benefited from precedent construing the basis for appointed counsel under the new statutory framework—where the termination of parental status achieved at the selection and implementation hearing under section 366.26 is but a continuation of the juvenile proceeding originally commenced by a petition under section 300. Presumably those hearings which do not directly threaten permanent separation of child from parent do not implicate due process rights and hence cannot be productive of error by reason of ineffective assistance of counsel. This would appear to be the rule suggested in *In re Malinda S.*, *supra*, 51 Cal.3d 368, 384-385 (which, however, dealt with the prior law).

With respect to those hearings which have the potential of termination of parental rights, however, due process entitlement to competent counsel (under the circumstances described in *In re Christina P.*, *supra*, 175 Cal.App.3d at p. 129) is apparent. That would certainly be the case in terms of the section 366.26 selection and implementation hearing, the immediate potential of which is an order severing parental ties and rendering the child available for adoption. We believe that the parent is also entitled to due process representation at the section 366.21 and 366.22 hearings (as well as any other hearing, such as that based upon § 361.5, subd. (b)) which have the potential of terminating reunification services and setting a section 366.26 hearing. Termination of parental rights cannot be accomplished at the section 366.26 hearing without the making of several important determinations, such as that the minor is likely to be adopted and that certain specified circumstances which would make termination detrimental to the child do not exist. Termination is also dependent, however, on the determination that the child should not be returned to the custody of the parent. This latter determination is made not at the section 366.26 hearing but at the prior section 366.21 or 366.22 hearing.

Accordingly, of all the decisions made during the course of these hearings, perhaps the one most potentially detrimental to the parent is made at the referral hearing rather than the selection and implementation hearing. As stated in the comment on page 11 of the Senate Select Committee Report on Children and Youth, Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (1988): "In essence, the critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted."

We conclude, therefore, that a parent is entitled to due process representation by counsel at any hearing which results in a referral to a section

366.26 selection and implementation hearing, and can raise as an issue on an appropriate and timely petition for review the contention of prejudicial error resulting from ineffective assistance of counsel. ▮ Appellant in this case complains of inept representation at just such a hearing, and hence we must conclude is entitled to raise the issue on appeal from an adverse ruling. The difficult question, for which all the above is merely preface, is whether the claim must be raised and presented to the appellate court *before* the selection and implementation hearing is held, and before final orders freeing the child for adoption are made.

At this point we are moved to review and reflect upon the objectives sought to be achieved by the new law and its very new judicial gloss. ▮ As we stated in *In re Sean E.* (1992) 3 Cal.App.4th 1594 [5 Cal.Rptr.2d 193], a juvenile dependency case "proceeds along a legislatively mandated time grid." Review hearings are mandated at specific time intervals, finality in child placement being required within 18 months after initial jurisdiction is assumed. "[T]he Legislature intended to eliminate any dilly-dallying in permanently placing a dependent minor and to avoid 'losing' a child in the bureaucratic maze . . . and to remove, or at least substantially reduce, any potential detriment to the child that could be caused by court delay." (*Id.* at p. 1597.) As we stated in *In re Taya C., supra,* 2 Cal.App.4th at page 8, ". . . delay disserves the interests of the minor, the parents, and the courts, and is clearly inconsistent with the intent of the Legislature."

Accordingly, we have been engaged in a serious campaign to tighten the controls on dependency litigation and straighten and shorten the paths of appellate review. In this appellate district we have adopted experimental rules of court creating a "fast-track" system for appellate review of dependency cases. (Rules 39.2, 39.2A.) We have both formally, through these rules, and informally by educational sessions with counsel, urged the use of writs for review of dependency orders rather than the more time-consuming formal appeals. We have avowed that this court will be "writ friendly" and that we will not only give full attention to all writs but will not deny them on procedural or technical grounds. While these steps have as yet been taken only in the Fourth District, we suspect they will in the future be expanded to other districts.

We, the Courts of Appeal, have also been enforcing the requirement of section 366.26, subdivision (k) that review of referral orders from a section 366.21 or 366.22 hearing be accomplished by timely writ. At times relenting in terms of treating appeals as writs (see *In re Rebecca H., supra,* 227 Cal.App.3d 825 and *In re Amber U.* (1992) 3 Cal.App.4th 871 [4 Cal.Rptr.2d 726 ]), we have more recently been "closing the door" on improperly filed or

late-filed petitions for review (see *In re Amanda B., supra,* 3 Cal.App.4th 935; *In re Michelle M.* (1992) 4 Cal.App.4th 1024 [6 Cal.Rptr.2d 172]).[5]

█ We believe that our "closed door" approach is essential to protect the rights of all interested parties. To do otherwise and routinely examine trial counsel's allegedly sub-par efforts in earlier proceedings in an appeal from the section 366.26 judgment would require us to become engaged in exactly the same review which we have sought, by enforcing the terms of section 366.26, subdivision (k), to exclude. By countenancing claims of ineffective assistance of counsel after the selection and implementation judgment, which claims pertain to services rendered at an earlier hearing, we will be effectively undermining the objectives of subdivision (k).

█ In attempting to preserve the constitutional rights of a parent we cannot ignore the rights of the minor for whose benefit the statutory scheme has been enacted. We must undertake a balanced analysis of the parent's rights, recognizing that the interest sought to be protected by the dependency law is the welfare of the child. (*In re Sherman M.* (1974) 39 Cal.App.3d 40, 44 [113 Cal.Rptr. 847].) There can be no question that at some point the minor acquires a fundamental right which precludes further governmental involvement in the administration of the minor's dependency. Exactly when and in what circumstances the minor acquires a constitutional right to a settled life is an issue which we need not decide in this case.[6] Nonetheless in

---

[5]We had assumed that recent appellate court opinions had established the point that review of determinations made at a section 366.21 or 366.22 hearing which resulted in referral to a section 366.26 hearing could be accomplished *only* by writ petition, and could not be included as additional appellate issues in the appeal taken from the judgment in the section 366.26 hearing. This proposition had been plainly set forth by our division of the Fourth District in *In re Amanda B., supra,* 3 Cal.App.4th 935; by the Fifth Appellate District in *In re Amber U., supra,* 3 Cal.App.4th 871, 880, and *In re Gilberto M.* (1992) 6 Cal.App.4th 1194 [8 Cal.Rptr.2d 285]; and by the Sixth Appellate District in *In re Michelle M.* (1992) 4 Cal.App.4th 1024, 1031 [6 Cal.Rptr.2d 172]. We have most recently discovered, however, that the Third Division of our Fourth Appellate District has taken a different view. (See *In re Cody L.* █(Cal.App.) and *In re Siebrina B.* █(Cal.App.).) The third division has concluded that even though review of rulings at a section 366.21 or 366.22 hearing must be taken by writ and are not directly appealable, the issues raised by the referral order from such hearing may survive and be raised by the appeal from the section 366.26 hearing. As is obvious from our ruling in this case, we do not agree with our brethren (and sister) from Orange County.

[6]In *Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 749 [278 Cal.Rptr. 907], the "liberty interest" of a child in entitlement to maintenance in a family unit was recognized (although the state's right by statute to interrupt that maintenance in terms of adoption procedures was affirmed). While we adopt the proposition that a child has a constitutional right to a reasonably directed early life, unmarred by unnecessary and excessive shifts in custody, we have difficulty in finding any specific authority for this proposition. Supportive of the

our well-motivated efforts to protect the parent's constitutional right we cannot lose sight that the objective of effective and efficient judicial administration here is the rights of the child.

■ At the outset we must reaffirm the black letter law established by section 366.26, subdivision (k) and our recent cases (such as *In re Amanda B., supra*, 3 Cal.App.4th 935) that error in hearings which result in a referral to a selection and implementation hearing must be brought by writ petition. We see no reason why allegations of error, when framed in terms of ineffective assistance of counsel at such hearing, are freed of this restriction. If appellant had been in a position to raise the contention of ineffective assistance of counsel at the 366.22 hearing *before* commencement of the selection and implementation hearing, she clearly would have been required to do so by writ petition rather than appeal. The fact that the review petition is not filed until *after* the selection and implementation hearing should have no bearing on this requirement. While the appeal is labeled as an appeal from the section 366.26 judgment, it is in reality, as we have noted above, primarily directed to errors alleged to have occurred at the earlier hearing.

■ Appellant asks that in the event we rely on the rule of section 366.26, subdivision (k) to preclude review by appeal, we then treat the appeal as a writ. In terms of the direct, substantive review of alleged errors made at the 366.22 hearing, this petition comes too late to be accorded status as a cognizable writ. Writ review of hearings which result in a referral for a section 366.26 selection and implementation hearing must be brought before that hearing commences or will be barred by the concept of laches. (See *In re Amanda B., supra*, 3 Cal.App.4th at p. 941; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 132, p. 773; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1991) Writs, ¶¶ 15:145-15:147, pp. 15-36–15-37.) The casting of the petition in terms of relief from prejudice resulting from ineffective assistance of counsel, however, undermines the potential of summary dismissal on the ground of laches. It is difficult to fault appellant for failing to bring the petition grounded on her attorney's negligence when her first knowledge of such resulted from appellate counsel's review of the case following the selection and implementation hearing.

concept, however, is the United States Supreme Court's most recent analysis of due process (*Planned Parenthood of Southeastern Pennsylvania v. Casey* (1992) __ U.S.__, __ [120 L.Ed.2d 674, 112 S.Ct. 2791]), wherein the court very broadly defines rights of personality as protected by the Fourteenth Amendment. Relationships of "marriage, procreation, contraception, family relationships, child rearing, and education" are protected. (*Id.* at p. __ [120 L.Ed.2d at p. 698].) In an appropriate case we believe it will be decided that at some point in the administrative process of terminating parental rights and creating new lives for dependent children, the due process rights of the delinquent parent may be neutralized by the competing liberty interests of the child in finalizing the child's permanent life planning. However, we do not reach that issue in this case, because our decision rests on the simpler and more accessible principles of inadequate showing of prejudice and selection of an improper avenue of review.

We have therefore reviewed the appeal as if it were a writ petition.[7] We find it lacking. The establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial. It is of course possible that the incompetency of counsel will be so gross as to jump out of the record and require no supplemental explanation. Such is not the usual case, however. Action taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record. It is for this reason that writ review of claims of ineffective assistance of counsel is the preferred review procedure. Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the writ petition. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Writs, § 15.179.1, pp. 15-38.6, 15-38.7.)

In appellant's paperwork we are favored by no such evidence. The alleged error of counsel, it will be remembered, was the failure to initiate a timely writ petition to challenge errors made at the 366.22 hearing. We are all aware, however, of the various reasons why appellate review is not sought as to specific orders. Many grounds might exist in this case, theoretically, for electing not to file a writ petition. The most common of these would be the lack of authority from the client to do so. The burden is on the writ petitioner to demonstrate conduct falling below the standard of care of the legal practitioner. This burden is not met because we have no evidence in the record suggesting the reason for counsel's failure to file a review petition. We cannot assume that the decision was the result of negligence, when it could well have been based upon some practical or tactical decision governed by client guidance.

Our deep-seated concern about the procedural problems associated with the late filing of writ petitions alleging ineffective assistance of counsel in dependency cases motivates us to identify another, and seemingly a fundamental, defect in appellant's review effort. To make her case, appellant would be required not only to show negligence on the part of her attorney but also that the negligence resulted in prejudice. In order to show prejudice it would be necessary to show that a different result would obtain were the section 366.26 judgment reversed and a new hearing ordered.

The problem here is that we are not dealing with static conditions. In a criminal case the factual scenario is established; it will not change; a retrial

---

[7]For purpose of this review and discussion in this case of first impression we have presumed that the complexity of the issues and the likelihood that representation by counsel would sway the outcome are such here that the statutory right to representation has been raised to a constitutional level.

can be staged upon the same facts and law as governed the first trial; and the issue of prejudice can be determined solely by viewing the status of affairs as they were when the negligence of counsel occurred.

Any reversal of an order freeing a child for adoption, however, cannot possibly return the selection and implementation hearing to the same arena in which it was first held.[8] This is because the focus of the hearing always must be upon the best interests of the child. The new hearing would entail not only the facts and evidence brought forth at the original hearing, but of necessity would require evidence as to the current status of the child. This enlargement of issues to be considered becomes even more obvious when we contemplate the possibility, as is requested in this case, of overturning not only the selection and implementation judgment, but returning for a rehearing of the old 366.22 hearing. At that hearing the principal issue is whether "return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor." (§ 366.22, subd. (a).) In order to sustain the burden of showing that it is "reasonably probable that a determination more favorable to [appellant]" (*Adoption of Michael D., supra,* 209 Cal.App.3d at p. 136) would result, appellant is required to demonstrate the likelihood of a different result *based on current facts.*

It may be possible in a hypothetical case, or indeed in this case, to conclude that the error made by counsel at a 366.22 hearing two years ago prejudiced a parent's then potential for maintaining parental rights. That conclusion assuredly does not lead to the assumption that those potential parental rights yet remain. Before an appellate court can conclude that prejudice has occurred it must, we believe, determine on the basis of current facts that it is likely that a different section 366.22 ruling, as well as a different section 366.26 ruling, will *now* be made.

How can an appellate court do this? Our brethren in Division Two of this appellate district recently faced the same perplexity. The majority in *In re*

---

[8]See *In re Cristella C., supra,* 6 Cal.App.4th 1363, in which the third division of our appellate district was faced with a claim that the termination process was unconstitutional because it lacked the requirement of a heightened burden of proof for the finding that a child should not be returned to the parent. The court determined that the finding at the section 366.26 hearing of likelihood of adoption altered the "relative severity of the consequences of an erroneous decision on the child. With the likelihood of adoption, the child is subject to a dramatically different set of outcomes as a result of the termination hearing than was the case in *Santosky* or *Angelia P.* Instead of a bleak future in foster care limbo on the one hand, and return to a possibly abusive household on the other, the likelihood of adoption effectively realigns the consequences of an erroneous decision in termination proceedings: The alternatives are now life with a stable family who have already sacrificed for the sake of the child's well-being versus life with (more often than not) a single parent to whom return of the child has been repeatedly shown to be detrimental." (*Id.* at p. 1370.)

*Issac J.* (1992) 4 Cal.App.4th 525 [6 Cal.Rptr.2d 65] concluded that ineffectiveness of counsel in a private termination case (in that case failure to file a timely notice of appeal, resulting in loss of appellate rights) simply could not be remedied by reversal of an order terminating parental rights. The court emphasized the importance of finality in the permanent plans of children and mused about the difficult position of the appellate court in measuring the effects of the attorney negligence. It remarked: "In reviewing an application, the appellate court would be in a poor position to evaluate the merits of the proposed appeal, or the effect of the delay on the child. In some cases, such as this one, the parent . . . may have acted diligently and been the victim of attorney incompetence—but this should not require relief if the judgment appears sound and the child is happily placed. . . . Further, the court is uninformed of the child's current circumstances, and cannot resolve contradictory assertions by the parties." (*Id.* at p. 534.)

Therefore, in order to determine prejudice (i.e., that the case would *now* yield a different result from that of the first hearing) the Court of Appeal must have evidence of the child's current status. It must know what has happened to the child since the hearing that is being reversed. Has the child been placed with its adopting parents? Is the child doing well? Has the child bonded to new foster-adoptive parents? If the child two years ago knew his parent, does he still remember her?[9] Reflecting upon this situation generally, we must conclude that it will be the rare case in which a child found adoptable will not, pending the appeal, have changed his circumstances very much to the detriment of any possible reunification with the parent.

What we are discussing is, in reality, the appellate court's holding an updated review hearing in the guise of determination of prejudice. Should appellate courts do this? Probably not. If and when a proper case arises, and a prima facie showing of probable prejudice is made before the appellate court, we will probably remand the case to the trial court for the evidentiary hearing as to prejudice. We do not remand in this case. There is no showing, one way or the other, as to the present status of the child. We are completely

---

[9]The court in *In re Cody L., supra,* ▮(Cal.App.) appears to recognize this principle. It ruled that errors in a section 366.21 or 366.26 hearing could be raised on appeal from a section 366.26 hearing, but cautioned that "[p]ractitioners should realize, however, that in many cases intervening events might render any error harmless and failure to seek writ relief may forfeit an otherwise just claim." The court, therefore, assumed that a "just claim" which would have resulted in reversal of the referral order may be undermined by evidence of events occurring *after* the order, apparently accepting the proposition that it is appropriate, even perhaps necessary, that the court in reviewing old errors made in prior hearings consider whether they are now correctable in light of the current status and condition of the child. (See also *In re Elise K.* (1982) 33 Cal.3d 138, 149 [187 Cal.Rptr. 483, 654 P.2d 253] (conc. opn. of Bird., J.), which argues that in reviewing orders pertaining to child placement it is appropriate for the appellate court to take evidence as to the current situation.)

unable to determine whether the parent would have any chance at all of reestablishing rights were another 366.22 hearing to be held. As the court in *Issac* said, we are "in a poor position to evaluate the merits of the proposed appeal, or the effect of the delay on the child." (*In re Issac J.*, *supra*, 4 Cal.App.4th at p. 534.) In such posture we surely cannot derail the permanent plan of this child upon pure speculation that appellant would prevail in a renewed review hearing.

DISPOSITION

The motion to dismiss the appeal is granted.

Wiener, Acting P. J., and Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 29, 1992.