3 Cal.App.4th 871 (1992)
4 Cal. Rptr.2d 726
In re AMBER U. et al., Persons Coming Under the Juvenile Court Law.
MERCED COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and Respondent,
v.
PATRICIA J., Defendant and Appellant.
PATRICIA J., Petitioner,
v.
THE SUPERIOR COURT OF MERCED COUNTY, Respondent;
MERCED COUNTY DEPARTMENT OF HUMAN SERVICES, Real Party in Interest.
Docket Nos. F015519, F016301.
Court of Appeals of California, Fifth District.
February 19, 1992.
*872 COUNSEL
Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.
Dennis L. Myers, County Counsel, and James B. Tarhalla, Deputy County Counsel, for Plaintiff and Respondent and for Real Party in Interest.
No appearance for Respondent Superior Court.
Lucretia H. Parks, under appointment by the Court of Appeal, for Minors.
[Opinion certified for partial publication.[*]]
OPINION
ARDAIZ, Acting P.J.
On March 13, 1989, a Welfare and Institutions Code section 300 petition was filed alleging Ms. J.'s boyfriend (Jose) had molested Ms. J.'s daughter (Amber) and had physically abused all three minors. The petition further alleged Ms. J. was unable to protect her children from this abuse. The minors were declared dependents on April 14, 1989. They were placed with relatives and a reunification plan was adopted. At the six-month review hearing, the minors were placed in foster care and reunification services were continued as previously adopted. At the 12-month *873 review hearing, the court found return presently would be detrimental but also found a substantial likelihood the minors would be returned to Ms. J.
At the 18-month review hearing, the court found it would be detrimental to return the minors to Ms. J., that the 18-month reunification period had lapsed, that reasonable reunification services had been provided and that Ms. J. had failed to complete the reunification plan. The court ordered reunification services terminated and ordered a hearing pursuant to Welfare and Institutions Code section 366.26.[1]
On March 1, 1991, appellant filed a notice of appeal from the order issued at the January 8, 1991, 18-month review hearing. The opening brief was filed on July 8, 1991. On July 19, 1991, appellant filed a writ petition. On October 8, 1991, the matters were consolidated.
On March 14, 1991, a section 366.26 hearing was held. The court appointed the foster parents guardians of the minors, issued letters of guardianship, and dismissed the dependency. No appeal was filed from this order.

FACTS
The social services report filed on April 18, 1989, the date of the disposition hearing, states that the mother, Ms. J., married in 1963 and had two children. Her husband died in an accident in 1968. Ms. J. then had relationships with three different men, each of whom fathered a child with her. One of these children had had problems with mental illness, and the report cites allegations of severe physical abuse by Ms. J. against all of these adult children. These individuals were not the subjects of this dependency proceeding.
Ms. J. dated the father, Kini U., of the three minors in question, Amber, William and George, until he reportedly threatened them with a chain saw. Ms. J. began living with Jose C. in 1988, approximately one year prior to the dispositional hearing.
The social services report prepared for the April 4, 1989, jurisdictional hearing states that on or about March 8, 1989, Amber U., a nine-year-old girl at the time the petition was filed, was sexually molested by Jose C. According to the report, Jose had molested Amber on another occasion, and had threatened to do so again. Amber reported he had molested her "lots of times," and had made her massage his penis. He threatened to beat her if she told anyone.
*874 Amber told her mother of Jose's molestation, and claims her mother told her she was lying and sent her to bed. Ms. J. did not believe the report because Amber had alleged earlier that her brother and a neighbor child also had molested her. Ms. J. denied Amber told her about being molested.
The report also alleged that all three minors were physically abused by Jose and Ms. J. The report states:
"Mr. C[.] would beat them so extensively that the mother would put ice on their butts to bring down the swelling. The mother admitted doing so. When the minors were detained, police officers noted a mark two inches in length on Amber's stomach. She said she got the mark two months earlier when Jose hit her with a belt. George had a mark on his back where he said Jose had hit him with a hay hook because he was not working hard enough. William described ongoing beatings. He said that sometimes his mother would try to block punches when Mr. C[.] was beating him. He told police that he has bruises all of the time but his mother helps him by putting ice packs on them."[2]
The report also stated all three children wanted to remain in foster care because of fear Ms. J. would not protect them from Jose.
The dispositional report alleged Ms. J. and Jose beat the children excessively, and that Ms. J. had been observed beating the children with belts, sticks, and wooden spoons. Ms. J. reportedly admitted to the social service worker that she had beaten the minors with a belt.
The report also indicated that Ms. J. had refused to believe that Jose had molested Amber, and stated her intention to reunite with Jose as soon as the children were returned to her. Ms. J. reported that Jose was out of the house, but the social worker reported that he was living in a trailer behind her home. Ms. J. was unemployed, and claimed that she was unemployable because of an unspecified medical condition.
The social services report recommended that the minors be placed with Ms. J.'s brother and sister-in-law in Alameda County until Ms. J. completed all of the reunification requirements.
The reunification service requirements recommended and adopted by the court were that Ms. J.: (1) successfully complete parenting classes; (2) successfully complete her job training course; (3) obtain a restraining order *875 against Jose C. and refrain from any contact with him; (4) refrain from any corporal punishment when she visits the minors; (5) visit the minors on a regular basis; (6) maintain a stable, safe, and appropriate home for at least three months prior to reunification; and (7) begin and cooperate with family therapy at least three months prior to the return of the children, and continue in therapy for at least three months after reunification, depending on the therapist's assessment of need.
At the dispositional hearing held on April 18, 1989, Ms. J.'s attorney stated Ms. J. was confused about where she was supposed to live. Ms. J. had gone to live with the children at her brother's house in Alameda County. Her brother, Mr. B., stated Ms. J. called Jose on a daily basis. The brother agreed, however, to let Ms. J. move back, provided she cease contact with Jose.
The court adjudged the three minors dependent children of the juvenile court, and found that there was a substantial danger to the physical health of the minors, and there were no reasonable means by which the minors' physical health could be protected without removal from the parents' physical custody.
The court conducted a six-month review on October 17, 1989. The social worker's report indicated the minors had been removed from the uncle's house at his request due to the "children's destructive behaviors and the children's need for 24 hour supervision." They were placed in a foster home in Merced County. Ms. J. had moved in with her adult daughter in Imperial Beach, California, and had not participated in the reunification services, nor had she responded to attempted communications from the social worker, Anne Spuur.
Ms. J. had not seen the children since April 1989. Ms. J. did attempt to arrange a visit with the minors after her return to Merced, but was told by the social worker that she needed to give advance notice to visit the children because it would take time to coordinate and arrange a visit. She did not contact the social worker again.
The social worker concluded "[Ms. J.] has not participated in the reunification services offered to her. However, should she participate successfully in reunification services during the next six months, reunification in this case may not have a negative emotional impact on the children."
Ms. J. was present at the review hearing, and agreed to the reunification plan. She indicated she had moved from Imperial Beach to a friend's house in Winton.
*876 The social worker reported in her 12-month review report and recommendation that Amber was adamant about not returning to her mother's care because she was concerned that her mother still liked Jose, and would take him back. All three minors remained in foster care with Max and Betty A. The social worker report described two incidents during supervised visits when Amber asked her mother if she still liked Jose, and the mother did not reply until Amber repeatedly pleaded with their mother to say that she did not like him. The mother finally agreed to Amber's plea. The other incident occurred when Amber found a picture of Jose in her mother's wallet with a red heart on it. When asked about the red heart, Ms. J. just said it was a long story as to why there was a red heart on it. On the basis of these two observations, the social worker concluded that Ms. J. was likely to reunite with Jose. The worker also reported that Ms. J. was notified that her young son, George, was admitted to the hospital for emergency surgery for appendicitis, but she did not come to visit him.
Ms. J. testified at the hearing that the conversations concerning Jose had occurred, but not exactly as the report described them. First, she said that Amber asked her if she hated Jose and Ms. J. did not want to teach her children to use hate to describe their feelings. She did agree with Amber that she did not like Jose but would not use the term, "hate." She also explained that the red heart was placed on Jose's picture a year before by her son, George, and she forgot it was still in her wallet. The statement it was "a long story" was made after she had explained to Amber she had forgotten to take it out and Amber wanted to know why. She said she had had surgery herself the day before George went to the hospital, was heavily medicated, and thus unable to visit him. She claimed she called the hospital to check his condition.
The social worker also reported that during the last six months, Ms. J. had been in "limited compliance with the Services Agreement." She had attended only six of the eleven scheduled visits. She claimed transportation problems. She never requested assistance with transportation even though she was advised such arrangements could be made. Ms. J. attended 10 of 12 parenting classes and completed "Hope[']s group on November 29, 1989. However, she did not participate in any individual or family counseling, nor did she participate in the mother's support group for molest victims." The social worker concluded Ms. J. had "made little or no progress on her identified problems," and recommended reunification services be terminated and that a permanency planning hearing under section 366.26 be set.
After hearing testimony from the social workers and Ms. J., the court found return to Ms. J.'s physical custody would create a substantial risk of *877 detriment to the minors, and that there was a substantial probability that there could be reunification within 18 months of the detention order. The court ordered that social services "tailor a services contract with all parties, and that that be presented for discussion in two weeks." The court admonished Ms. J. in part as follows:
"Now, what is going to happen there is that this contract has to be very clear and you have to realize that if it's not done within 18 months then it's all over and your children will not be reunited. This has to include counseling. This has to include the parenting classes, and it has to include the attendance at the abuse, in the abuse counseling, and whatever else of which I'm not completely knowledgeable, but whatever other requirements are necessary. And there cannot be any excuses.
".... .... .... .... .... .... ....
"Unfortunately many times here it's gray, it's very gray, and the law is very specific. At the end of 12 months if the children are not returned then there has to be a finding that there is a substantial probability that they can be within six more months, and I think that can be made. I think that if you get down to each of the specific points and you comply with them, it can be done.
"I must tell you I think it's going to be very difficult at this point and it's going to depend a lot upon the children's feelings whether or not they want to reunite. The idea of this whole thing is to reunite families but if there has been a problem that cannot be addressed and if we cannot resolve the original issues that required their being detained from the home which specifically as I'm aware is a sexual abuse and the prevention of any further sexual abuse, then there should not be reunification.
"So this is the last break that you can be given, and I don't know how much more strongly I can come down on you to make sure that you understand it's your job to get there when you have to be.
"... right now it's a matter of are you going to be reunified with your children and at the 18-month hearing I think it's going to be very simple. Either the contract was completed or it wasn't. If it was then probably the family would be reunited. If it's not, then it won't."
The hearing to review the service contract was held on May 4, 1990. Ms. J. was not present and her attorney stated that she had moved back to San Diego. Counsel further stated the contract appeared to be appropriate but *878 requested, pursuant to section 375, that the matter be transferred to San Diego. After hearing testimony and argument, the court concluded a transfer would be detrimental to the children and denied the request.
The court also adopted the "plan dated May 4, 1990, as the order for the services agreement." The plan was detailed and specific and required Ms. J. in part to become involved in both individual and family counseling by May 18, 1990, to address the following issues:
"a. The molest of Amber, William, and George [U.] by Jose [C.] and Patricia [J.]'s unwillingness to protect the children and support the children's allegations;
"b. The physical abuse of Amber, William, and George [U.] perpetrated by Jose [C.] and Patricia [J.] and Patricia [J.]'s unwillingness or inability to protect the children;
"c. The denial issues surrounding the molest, physical abuse and neglect of Amber, William, and George [U.];
"d. The lack of parenting skills exhibited by allowing the children to remain in a situation that was unsafe to the children;
"e. The lack of understanding, and ability to learn skills to control the abuse reactive behaviors of the children;
"f. The lack of understanding of the risk Patricia [J.] put her children in by not obtaining a restraining order against Jose [C.];
"g. Patricia [J.] involving herself in relationships with abusive men;
"h. Patricia [J.]'s inability to maintain stable intimate relationships;
"i. Patricia [J.]'s inability to maintain stable living environment;
"j. Patricia [J.]'s inability to provide adequate financial support for herself and her children;
"k. Patricia [J.]'s inability to become gainfully employed;
"l. Patricia [J.]'s issues of neglect and abandonment by her parents during her own childhood;
"m. Patricia [J.]'s inability to parent her children with success;
*879 "n. Any other issues that are identified during the course of treatment by the therapist or Patricia [J.] herself."
Ms. J. was also ordered to contact Liz Freitas (a licensed clinical social worker) "by telephone or in writing by May 18, 1990, and begin participation in the Mothers Support Group for Molest Victims by June 1, 1990."
The 18-month review hearing originally set for September 14, 1990, was not held until January 8, 1991.[3] Social worker Anne Spuur, testified that Ms. J. had not begun counseling until October 1, 1990, almost one month after the date originally set for the eighteen-month review hearing. Ms. Spuur further testified that even when Ms. J. finally began counseling, she "continued to deny the molest and physical abuse issues." Finally, Ms. Spuur testified that Ms. J. had not been successful in dealing with any of the issues for which she had been referred to counseling.
The court found it would be detrimental to return the minors to their parents, that the 18-month reunification period had lapsed, that reasonable reunification services had been provided and that the parents had failed to complete the reunification plan. The court ordered reunification services terminated and ordered a hearing pursuant to Welfare and Institutions Code section 366.26.

DISCUSSION

I.

Whether the Orders Issued at the Section 366.22 Hearing Are Reviewable on Appeal
(1) Appellant purports to appeal from the orders entered after the 18-month review hearing which terminated reunification services and ordered a hearing pursuant to section 366.26. She seeks to challenge the adequacy of the reunification services offered and the sufficiency of the evidence supporting the detriment finding.
"According to section 366.26, subdivision (k), an order for a hearing pursuant to the section is not appealable but may be subject to writ review." (In re Rebecca H. (1991) 227 Cal. App.3d 825, 835 [278 Cal. Rptr. 185].)
At the 18-month review hearing, the juvenile court determined return to Ms. J. would be detrimental, terminated reunification services, and scheduled a hearing pursuant to section 366.26. Accordingly, this court directed *880 the parties to address the applicability of section 366.26, subdivision (k), to the present appeal from the juvenile court's orders issued at the 18-month review hearing.
Appellant relies on In re Kristin W. (1990) 222 Cal. App.3d 234 [271 Cal. Rptr. 629], for the proposition that subdivision (k) of section 366.26 does not preclude review on appeal of the issue of the adequacy of reunification services. Kristin W. concluded an attack on the adequacy of reunification services did not constitute a direct attack on the authorization order and was thus cognizable on appeal. (Id. at p. 248.) In re Elizabeth M. (1991) 232 Cal. App.3d 553 [283 Cal. Rptr. 483] rejects Kristin W.'s conclusion on this point. Elizabeth M. states:
"We disagree with the statement in Kristin W. that section 366.25, subdivision (j) does not preclude a challenge on appeal to the adequacy of reunification services. The remedy [appellant] seeks is reversal of the authorization order. A challenge directed toward overturning such an order falls squarely within section 366.25, subdivision (j). [Citation.]" (232 Cal. App.3d at p. 563.)
Resolution of the conflict between Kristin W. and Elizabeth M. is not necessary here. Kristin W. is not controlling as it discusses section 366.25, subdivision (j) and the procedures for termination of parental rights for minors adjudged dependents prior to January 1, 1989. At issue in the present case are the procedures for status review and termination of parental rights for children declared dependent on or after January 1, 1989. In Rebecca H., supra, this court considered whether a denial of reunification services under section 361.5 was nonappealable pursuant to section 366.26, subdivision (k). This court held:
"Because the juvenile court must promptly conduct a permanency planning hearing when it rejects reunification entirely (§ 361.5, subd. (f)) a challenge to the complete denial of reunification `constitutes a direct attack' on a provision in the disposition order which sets a section 366.26 hearing. [Citations.] Consequently, the propriety of the juvenile court's refusal to grant reunification is not reviewable by appeal from the dispositional order. [Citation.]" (In re Rebecca H., supra, 227 Cal. App.3d at p. 836, fn. omitted.)
Here Ms. J. seeks to challenge the court's finding at the 18-month review hearing that adequate reunification services were provided and the finding that return of the minors to her care would be detrimental. Section 366.22 provides that prior to ordering a section 366.26 hearing the court must first determine that return of the minor would be detrimental and that reasonable services have been offered or provided to the parent or guardian. (§ 366.22, *881 subd. (a)(1).)[4] The remedy sought when challenging either of these findings is reversal of the order setting the section 366.26 hearing. Such a challenge constitutes a direct attack on the order setting a section 366.26 hearing and, pursuant to subdivision (k) of section 366.26, is not subject to review on appeal.

II.-III.[*]
.... .... .... .... .... .... .... .
The judgment is affirmed. The writ of mandate/prohibition is denied.
Harris, J., and Buckley, J., concurred.
A petition for a rehearing was denied March 12, 1992, and appellant's petition for review by the Supreme Court was denied June 11, 1992.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The petition filed initiating the dependency proceeding did not allege physical abuse by Ms. J.
[3] The delay resulted from attempts to obtain services of a Tongan interpreter for the recently found father.
[4] Section 366.22, subdivision (a)(1) provides in relevant part: "(a) When a case has been continued pursuant to paragraph (1) of subdivision (g) of Section 366.21, the court, at the 18-month hearing, shall order the return of the minor to the physical custody of his or her parent or guardian unless, by a preponderance of the evidence, it finds that return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The probation department shall have the burden of establishing the detriment. The failure of the parent or guardian to participate regularly in any court-ordered treatment programs shall constitute prima facie evidence that return would be detrimental.... [¶] If the minor is not returned to a parent or guardian at the 18-month hearing and the court determines that reasonable services have been offered or provided to the parent or guardian, the court shall develop a permanent plan. The court shall order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan for the minor. However, if the court finds by clear and convincing evidence, based on the evidence already presented to it that the minor is not adoptable and has no one willing to accept legal guardianship, the court may order that the minor remain in long-term foster care. The hearing shall be held no later than 120 days from the date of the 18-month hearing. The court shall also order termination of reunification services to the parent. The court shall continue to permit the parent to visit the minor unless it finds that visitation would be detrimental to the minor."
[*] See footnote, ante, page 871.