[No. H008636. Sixth Dist. May 6, 1992.]

In re DINO E., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
WENDELL E., Defendant and Appellant.

**COUNSEL**

Valerie L. Nalbantian and Deanna Lamb, under appointments by the Court of Appeal, for Defendant and Appellant.

Steven M. Woodside, County Counsel, and L. Michael Clark, Deputy County Counsel, for Plaintiff and Respondent.

George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Following a combined 12- and 18-month review hearing, the juvenile court issued an order authorizing a

permanency planning hearing pursuant to Welfare and Institutions Code section 366.26, thereby terminating reunification services to the minor's father, Wendell E. (Welf. & Inst. Code, § 366.22, subd. (a).[1]) The father appeals, contending that the order was an abuse of discretion in light of the court's finding that reasonable reunification services had not been provided to him.

A referral order pursuant to section 366.22 is made nonappealable by section 366.26, subdivision (k), but may be reviewed by extraordinary writ. (§ 366.26, subd. (k); *In re Amber U.* (1992) 3 Cal.App.4th 871, 880 [4 Cal.Rptr.2d 726].) Because of the circumstances of this case we will treat the appeal as a petition for a writ of mandate.

We conclude that the peremptory writ of mandate must issue and we direct that the court hold further proceedings in order to determine whether to proceed with the section 366.26 selection and implementation hearing, in light of the opinions expressed herein.

### BACKGROUND

Dino E. was born on December 19, 1989. He was taken into protective custody due to his mother's mental illness and history of drug abuse. His parents were not married. Appellant Wendell E. was named as the father on the birth certificate. Two days later, on December 21, 1989, a section 300 petition was filed alleging that Dino came within the provisions of subdivisions (b) and (j).[2] Appellant was named in the petition as the father, although his whereabouts were listed as "unknown."

At the initial detention hearing the following day, appellant appeared and the hearing was continued in order that a public defender be appointed to represent him. Appellant failed to appear at the next hearing on December 26, 1989, and the court ordered that Dino be detained.

A jurisdictional hearing was set for January 11, 1990. The social worker's report of that date states that Dino's parents had been offered reunification services regarding two other children but that "after the initial investigation,

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Section 300, subdivision (b) provides in part: "The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor . . . ."

Section 300, subdivision (j) provides in part: "The minor's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is substantial risk that the minor will be abused or neglected, as defined in those subdivisions. . . ."

the parents made no effort to maintain contact with the social worker, and the siblings remain Court Dependents." It stated further that "both parents have a history of criminal activity and unstable housing. Both must fulfill all outstanding obligations of the adult criminal court and refrain from any further entanglements with the law. . . . Completion of a program of parenting classes will be required of both parents." The report concluded: "[t]he prognosis for reunification is poor, given the history of the parents with regards to their other children who all remain in out-of-home placement."

The matter was continued for a week, during which time Dino's mother informed the social worker that appellant was not the father. At the next hearing on January 19, 1990, the court ordered that the social worker facilitate a paternity test, and that appellant have supervised visitation with the child.

After several further continuances, representation was arranged for appellant and the case was set for March 27, 1990. The social worker's report of that date indicated that, due to the disappearance of the mother, the department of family and children's services (DFCS) had arranged for a special paternity test that required blood from only the alleged father and the child. The report also noted that while appellant was not in a position to provide a home for the child at present, his "persistence in wanting to accept responsibility for the minor is notable." Appellant's mother, who lived in Cincinnati, Ohio, had contacted the social worker on March 8, 1990. The grandmother had informed the social worker that she wanted to raise the child "if the minor is the father's son." The court sustained the allegations of the petition and ordered a dispositional hearing for April 17, 1990.

On April 17, 1990, Dino was adjudged a dependent child of the court. The dispositional orders incorporated the social worker's recommendations that the "parents," either together or separately, obtain a suitable and stable residence for the minor, complete a parent education program, maintain adequate visitation with the child, and cooperate with and maintain regular contact with the social worker. In addition, the court ordered the social worker to proceed with the paternity test. And finally, the court set a hearing date of May 15 for receipt of the service plan, and a six-month review hearing for September 27, 1990. Appellant appeared with counsel at the dispositional hearing and signed the order of dependency.

A family reunification service plan was developed for the mother only, dated June 12, 1990. The mother accepted the plan on June 26, 1990, at which time she told the social worker again that appellant was not Dino's

father. No formal reunification plan was filed for appellant. Shortly after the dispositional hearing, however, and in accordance with the court's orders, the social worker referred appellant to a parenting class. On the day the parenting class was to start, appellant learned that the police were looking for him on an outstanding warrant, and he decided to turn himself in.

The blood tests of appellant and the minor indicated only that appellant could not be excluded as the natural father. On June 28, 1990, the court ordered that the mother, who was at that time incarcerated, participate in blood testing. This was accomplished in due course and the results of all of the blood tests showed a high probability that appellant was the natural father of Dino. The court declared appellant to be Dino's natural father on August 14, 1990.

On August 23, 1990, appellant filed a petition under section 388 seeking relative placement for Dino and a sibling, and alleging that until paternity was legally established, he had been unable to assert his right to request placement with relatives who could provide care.[3]

The court conducted the scheduled six-month review hearing on September 27, 1990. Appellant was present, although he had been taken into custody in May and was serving six months in the county jail. The social worker's report noted that the father had not had an opportunity to participate in reunification services because his paternity had just been established the previous month. Appellant's mother was also present at the hearing. On the advice of the social worker she had travelled from her home in Ohio to attend the hearing and personally make known her wishes to have custody of Dino. The report stated that appellant wanted the child placed with his mother in Ohio. On the day of the hearing, the grandmother filled out a "Request for Relative Home Placement," in which she stated that she provided a home for three children of appellant's sister and that she wanted to care for Dino and raise him with the rest of his family.

The court adopted the social worker's recommendations for continued foster care for Dino and ordered that visits be set up for Dino and his grandmother. The social worker's report repeated earlier recommendations that the parents maintain adequate residential accommodations for the minor, that they complete parenting programs, and that they maintain regular contact with the social worker. The report concluded by recommending that "continued reunification services" be provided, and the court so ordered.

Weekly visits between Dino and his grandmother were arranged and four or five such visits took place. Toward the end of November the grandmother

---

[3]The record does not show that any further action was taken on the section 388 petition.

returned to Ohio. According to her testimony, she had been told by the social worker that she should return home in order to facilitate a home study for purposes of placing Dino.

Upon his release from jail in November of 1990, appellant informed the social worker that he wanted to work on reuniting with Dino so that he could have Dino placed with him instead of with his mother in Ohio. The social worker arranged for weekly visits between appellant and Dino. Appellant was also referred to a parenting class. He enrolled in a class which began on February 5, 1991. His attendance was sporadic, however, and he was dropped from the class after three absences.

The 12-month review hearing was commenced on March 20, 1991, and was continued to April 18, for a contested hearing. The report prepared for the 12-month review recommended that reunification services be terminated and that a section 366.26 hearing be ordered. It found that "there is no substantial probability that the minor will be returned to the physical custody of his parents within the next six months." During this time appellant was living in a truck in the parking lot of a furniture company where he worked as night watchman in exchange for a place to live. These accommodations, by his own admission, were an unsuitable living place for the child.

The contested hearing was held over five days in April, May and June. Appellant testified in his own behalf. His mother had returned to California to participate in the hearing. She testified that she wanted to raise Dino with the other children in the family because he belonged to her "bloodline" and her "culture." She said she came to California to get Dino as soon as possible after learning that appellant was legally the father. She went back to Ohio because she thought she had to in order for the home study to be conducted. No one contacted her there and her calls to the social worker in California were not returned. At the time of the hearing, no home evaluation had been done.

At the conclusion of the hearing, on June 7, 1991, the court found that the DFCS had not complied with the relative placement requirements of section 361.3, and it ordered DFCS to initiate a request for a home study of appellant's mother in Ohio. The court also ordered that the foster parents, with whom Dino had been living since shortly after his birth, be evaluated as to their sensitivity to Dino's race, ethnicity and culture, pursuant to Civil Code section 275. In regard to reunification services, the court found that adequate services had been provided the mother, but as to appellant the court stated: "I don't believe, in fact, even by the remotest stretch of the imagination, I cannot find that reasonable services were provided to Mr. [E]."

The court observed that June 26, only 19 days away, marked 18 months since Dino had been detained. At the court's suggestion the parties stipulated that the present hearing would constitute a combined 12- and 18-month review hearing pursuant to sections 366.21 and 366.22. The court denied appellant's request to extend reunification beyond the 18 months because the court believed "[t]he law doesn't permit it." The court ordered a section 366.26 selection and implementation hearing set for October 3, 1991, and ordered that appellant in the meantime continue to have reasonable visitation with Dino.

On July 2, 1991, appellant filed a notice of appeal from the referral orders made pursuant to sections 366.21 and 366.22. On September 6, 1991, he filed a petition for a writ of mandate with this court raising the same challenge to those orders. This court summarily denied appellant's writ petition on September 12, 1991. (Dock. No. H008831.) The Supreme Court denied review on October 28, 1991.

## DISCUSSION

■ Appellant argues that the juvenile court abused its discretion in ordering a section 366.26 hearing after finding that reasonable reunification services had not been provided to him.

■ At the outset we note that we are aligned with those courts which have held that a referral order authorizing a section 366.26 is made nonappealable by section 366.26, subdivision (k). (*In re Amber U., supra*, 3 Cal.App.4th at p. 880; *In re Michelle M.* (1992) 4 Cal.App.4th 1024 [6 Cal.Rptr.2d 172].) Under unusual circumstances, however, we may treat the appeal as a petition for an extraordinary writ. (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 837 [278 Cal.Rptr. 185]; *In re Catherine S.* (1991) 230 Cal.App.3d 1253, 1256-1257 [281 Cal.Rptr. 746]; *In re Johnny M.* (1991) 229 Cal.App.3d 181, 187 [279 Cal.Rptr. 693].) ■ Since our previous order was a summary denial, it is not deemed to be a conclusive determination of the issues and we are not precluded from considering the merits at a later date. (*Richer v. Superior Court* (1976) 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].) ■ Having reconsidered the matter, we now determine that the court erred in ordering a section 366.26 hearing in this case without any exercise of discretion.

At the time of the combined 12- and 18-month review in this case, the governing statute provided as follows: "If the minor is not returned to a parent or guardian at the 18-month hearing and the court determines that reasonable services have been offered or provided to the parent or guardian,

the court shall develop a permanent plan." (Former § 366.22, subd. (a).)[4] This language appears to indicate that the court must find that reasonable services have been offered to the parent before ordering that a permanent plan be developed for the minor.

Unfortunately the statute does not provide any guidance as to what options are available to the trial court in the event it finds, as it did in our case, that reasonable services were *not* provided to the parent. Appellant argues that the court must extend the reunification period beyond the 18 months and order that the appropriate services be offered. Respondent contends that the court must set a section 366.26 hearing at the 18-month review regardless of whether reasonable services have been offered or not, if it finds that returning the child to its parent would be detrimental.

■ The resolution of this issue reveals the tension inherent in a statutory scheme which endeavors to accommodate competing interests of fundamental importance. On the one hand there is a strong public policy in this state that " 'judicial proceedings to declare a child free from parental custody and control shall be fully determined as expeditiously as possible.' " *(In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1223 [259 Cal.Rptr. 863] (conc. opn. of Brauer, Acting P. J.).) To this end the Legislature has set an outer limit of 18 months from the original order of detention for the court to determine whether the child is to be returned to the parents or permanently placed elsewhere. On the other hand, the statutory scheme was designed with the purpose of allowing the parents the opportunity to reunite with the child by complying with a service plan within the given time frame. *(Ibid.)* Failure to formulate an adequate reunification plan which realistically can be implemented within the 18 months defeats this purpose and has been held to be reversible error. *(In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625-626 [179 Cal.Rptr. 688]; *In re Jeremy C.* (1980) 109 Cal.App.3d 384, 388-393 [167 Cal.Rptr. 283]; Cal. Rules of Court, rule 1376(b) (now renumbered 1455); *In re Kristin W.* (1990) 222 Cal.App.3d 234, 256 [271 Cal.Rptr. 629]; *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1458 [234 Cal.Rptr. 84].)

■ The statutes and rules governing dependency actions clearly require that a family reunification plan be developed as a part of any dispositional order removing a child from its home. *(In re Jamie M.* (1982) 134

---

[4]Effective January 1, 1992, this sentence now reads: "If the minor is not returned to a parent or guardian at the 18-month hearing, the court shall develop a permanent plan." The language requiring the court to determine that reasonable services were offered has been excised from the opening sentence of the paragraph and moved to the end of the paragraph, as follows: "The court shall determine whether reasonable services have been offered or provided to the parent or guardian." (Stats. 1991, ch. 820, § 4.) This new version was not in effect at the time the court made its order in our case.

Cal.App.3d 530, 545 [184 Cal.Rptr. 778].) A recommended plan must be included in the social study which is submitted to the court prior to any dispositional order in a section 300 case. (Cal. Rules of Court, rule 1455; § 358.) The reunification plan must be furnished to all parties prior to the hearing so that the parents can be put on notice as to "what must be accomplished to reunite the family." (Advisory Committee com. to rule 1376(b) (now renumbered 1455).) Consequently the plan must be specifically tailored to fit the circumstances of each family (*In re Michael S.*, *supra*, 188 Cal.App.3d 1448, 1458), and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding. (*In re Rebecca H.*, *supra*, 227 Cal.App.3d 825.)

 Respondent DFCS points out that appellant was present at the dispositional hearing, signed the court's order which adopted the general recommendations contained in the social worker's report, and was presumably aware of those recommendations. Moreover, appellant was twice referred by the social worker to a parenting class, once in May of 1990 and again after his release from jail in November of 1990. He enrolled in a class but was dropped due to poor attendance. Also, visitation with Dino was arranged for him as well as for his mother.

The fact remains, however, that no reunification plan was ever developed for appellant. A "mechanical approach" to a reunification plan is not what the Legislature intended: "[s]uch a plan must be appropriate for each family and be based on the unique facts relating to that family." (*In re Edward C.* (1981) 126 Cal.App.3d 193, 205 [178 Cal.Rptr. 694]; see also *In re Kristin W.*, *supra*, 222 Cal.App.3d at pp. 254-255; *In re Bernadette C.*, *supra*, 127 Cal.App.3d at p. 626.) The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success. (*In re John B.* (1984) 159 Cal.App.3d 268, 273, 276 [205 Cal.Rptr. 321] .) Here the trial court found that the services offered to appellant were inadequate. As the court put it, "Nobody gave Mr. E. the map. He needed some direction. It wasn't there." It appears the evidence supports the court's finding.

Having made such a finding, the trial court believed it was compelled nonetheless to terminate reunification and order the section 366.26 hearing. Respondent claims the court had no other option under the law, since it had an absolute duty to order a section 366.26 hearing at the time of the 18-month review if it found that the child could not safely be returned to the parent at that time. (*In re Brian R.* (1991) 2 Cal.App.4th 904 [3 Cal.Rptr.2d 768]; *In re Johnny M.*, *supra*, 229 Cal.App.3d 181; *In re Cory M.* (1992) 2 Cal.App.4th 935 [3 Cal.Rptr.2d 627].) In each of the cases relied upon by

respondent, however, a reunification plan had been developed for the parent, who had failed to comply in some respects with its requirements. Those cases are therefore distinguishable from ours and do not support respondent's argument.

Respondent points out that different requirements apply at the 12- and 18-month review hearings. At the 12-month review, section 366.21 provides that the court may order reunification services extended for six months and *may not* order a section 366.26 hearing unless there is "clear and convincing evidence that reasonable services have been provided or offered to the parents." (§ 366.21, subd. (g)(1).) Section 366.22, which governs the 18-month review, does not specifically provide an option for continued reunification services. Further, there is no prohibition against ordering a section 366.26 hearing. Respondent argues that these differences mean that the Legislature intended the court to order a section 366.26 hearing at the 18-month review, even in the absence of a finding that reasonable services have been provided.

We do not agree that this is the only logical conclusion to be drawn from these statutes. In the usual case, a service plan will be developed at the dispositional hearing and its implementation will be reviewed at six- and twelve-month intervals. Provisions that the court may extend services for an additional six months, but not beyond a total of eighteen months, promote the dual purpose of expediting a permanent placement for the child while at the same time allowing the parents the opportunity to reunite the family. Where no reunification plan is in place, however, a strict enforcement of the time line does not provide the opportunity to reunite the family. We do not believe that such a result was intended by the Legislature.[5]

We conclude that under the circumstances of this case, where the court was faced with the prospect that the 18 months had elapsed and no reunification plan had been developed for the parent, the court was entitled to weigh the various interests involved and exercise its discretion.

One Court of Appeal, in a similar context, has recently observed that the juvenile court may, upon noticed motion and for good cause, "continue *any* hearing 'beyond the time limit within which the hearing is otherwise required to be held' provided only that such is not contrary to the best interests of the minor." (*In re Sarah D.* (1992) 5 Cal.App.4th 448, 455, fn. 6 [6

---

[5]Respondent has referred us to materials prepared by a speaker at a program by California Center for Judicial Education and Research (CJER) entitled ".26 HEARINGS," directing our attention to the section which states that the court must "still set for .26" at the 18-month review "even if found that reasonable efforts not made." The materials, however, do not contain any citation to legal authority or precedent and do not have the force or effect of the law.

Cal.Rptr.2d 772] review granted June 25, 1992 (S026737); § 352.[6]) Although the court in *Sarah D.* cautioned that " 'continuances are expressly discouraged' " (see *In re Emily L.* (1989) 212 Cal.App.3d 734, 743 [260 Cal.Rptr. 810]), the fact remains that "there is no legal impediment for slight and justified delays." (*In re Sean E.* (1992) 3 Cal.App. 4th 1594, 1599 [5 Cal.Rptr.2d 193]; *In re Michael R.* (1992) 5 Cal.App.4th 687, 694 [7 Cal.Rptr.2d 139] see also *In re Michael S., supra,* 188 Cal.App.3d 1448, 1461, fn. 4; *In re Corienna G.* (1989) 213 Cal.App.3d 73, 81 [261 Cal.Rptr. 462] ["[I]t is open to question whether a court has discretion to order further reunification services after 18 months."]; *In re Cory M. supra,* 2 Cal.App.4th 935, 946.)

No motion was brought under section 352 in this case. We believe that statute indicates, however, that the court has discretion upon a showing of good cause to continue juvenile dependency hearings beyond the statutory time limits. Had the court here been inclined to continue the 18-month review hearing on the basis that adequate services had not been offered appellant, we believe it could have done so. In that case the court could have made findings indicating in what respects it found the services of DFCS to be lacking, so that the appropriate services could be developed during the continuance.

On the other hand, the court could have determined, in its discretion, that the child's need for prompt resolution of his custody status outweighed any need for a continuance to provide further services to appellant.

On remand the court may entertain a section 352 motion for continuance of services beyond the statutory time. The court may consider the likelihood of success of any further reunification efforts, the fact that nearly a year has passed in Dino's life during the pendency of this appeal, any information

[6]Section 352, subdivision (a) reads as follows: "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. Neither a stipulation between counsel nor the convenience of the parties is in and of itself a good cause. Further, neither a pending criminal prosecution nor family law matter shall be considered in and of itself as good cause. Whenever any continuance is granted, the facts proven which require the continuance shall be entered upon the minutes of the court. [¶] In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."

developed pursuant to the court's previous orders,[7] and the circumstance that appellant, as the parties have informed us at oral argument, is presently incarcerated.

In light of our disposition, we find it unnecessary to reach appellant's argument that as a putative father he was deprived of equal protection of the law.

## DISPOSITION

Let a peremptory writ of mandate issue, directing that the trial court vacate its order authorizing a selection and implementation hearing pursuant to section 366.26, and ordering that it hold further proceedings consistent with the opinion herein.

Cottle, Acting P. J., and Stone, J.,* concurred.

---

[7]For instance, we have been advised that both the home study of the grandmother and the Civil Code section 275 evaluation have been completed.

*Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council.