Filed 5/14/26  In re J.B. CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | C102939 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>A.B.,<br>　　　Defendant and Appellant. | (Super. Ct. No. 53005496) |

Appellant A.B., mother of the minor J.B., appeals from the juvenile court's order denying her request for placement of the minor in her custody.  (Welf. & Inst. Code, §§ 361.2, 395.)[1]  Mother contends there was insufficient evidence to support the juvenile court's finding that placement of the minor with mother would result in substantial risk of detriment to his physical or emotional well-being.  The Placer County Department of Health and Human Services (Department) argues mother's claim was rendered moot by a subsequent court ruling and, in any event, the claim lacks merit.  We will dismiss mother's appeal as moot.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

Portions of the background are taken from our unpublished opinion filed in mother's previous appeal. (*In re J.B.* (Apr. 2, 2025, C100564) [nonpub. opn.].)

The then-12-year-old minor came to the attention of the Department in September 2023 when law enforcement executed a search warrant at the home where the minor lived with his father and his paternal great-uncle Jason. The search revealed child pornography and drug paraphernalia that was accessible to the minor, and the minor told law enforcement that father used illegal substances. Father was arrested and the minor was taken into protective custody. The extent of Jason's involvement was also being investigated. (*In re J.B.*, *supra*, C100564.)

*Dependency Petition*

In October 2023, the Department filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b), (c), and (g). Mother was named only in the section 300, subdivision (b) allegation, which stated the minor had been removed from mother in September 2012 due to mother's general neglect and emotional abuse and was ultimately placed with father, who was awarded sole legal and physical custody. Mother had supervised visitation rights. The minor told the social worker that mother was homeless and had not visited for several months. He also stated she was pregnant and had a boyfriend, Ethan, who was abusive to her. (*In re J.B.*, *supra*, C100564.)

Mother wanted the minor to live with her or, alternatively, with the maternal grandmother. However, due to mother's child welfare history, the Department could not place the minor with her without further assessment. (*In re J.B.*, *supra*, C100564.) On October 3, 2023, the juvenile court ordered the minor detained with twice weekly supervised visitation between the minor and each of his parents. (*In re J.B.*, *supra*, C100564.)

According to the December 2023 jurisdiction/disposition report, the minor told the social worker that mother had mental health issues that caused her to behave in an unsafe

2

manner, and that she had a mental breakdown after learning father had cheated on her. The minor only saw mother about once a year, and she had not visited in some time due to her pregnancy, which she was attempting to hide from father. The minor did not want to stay with mother as he felt she was overprotective and was trying to separate him from father, with whom he wanted to live. Father confirmed that mother seldom visited the minor and did not have much of a relationship with him. When mother did visit the minor, her boyfriend Ethan had inappropriate conversations with and made inappropriate comments to the minor, which mother was unable to recognize or acknowledge when pointed out. The Department wanted to provide mother with services to address those and any other concerns prior to any possible placement of the minor in mother's custody. However, the social worker's multiple attempts to meet with and interview mother to obtain necessary information were thwarted by mother's unavailability and failure to participate. Due to mother's child welfare history, her minimal contact with the minor despite ample opportunity, and her current lack of availability, the Department recommended that mother not be considered for placement. (*In re J.B.*, *supra*, C100564.)

The Department's January 2024 report stated mother was still not making herself available to the social worker despite requesting placement of the minor. She was inconsistent with scheduled visits, either failing to confirm the visit or not showing up at all. Although mother presented well when she participated in video visits with the minor, her boyfriend Ethan, who was also present, appeared to be intoxicated. Mother continually tried to persuade the minor to live with the maternal grandmother despite the minor telling her he did not want to and would be uncomfortable doing so. Mother attended a November 2023 in-person visit with the maternal grandmother, who sat quietly, and Ethan, who appeared intoxicated and made inappropriate comments about father being a pedophile. Mother was eventually notified that she could not bring Ethan to future visits due to his apparent intoxication and his inappropriate behavior. Although

3

mother's interaction with the minor was reportedly positive, the minor referred to her by her first name and kept her at a distance during video calls. (*In re J.B.*, *supra*, C100564.)

Mother reported she was living at a shelter for unhoused families but was moving into an apartment in several weeks and would be living with her daughter and Ethan, to whom she was now engaged. The apartment could also accommodate the minor. Mother reported that Ethan had struggled with alcohol in the past but was working on his sobriety, attending AA meetings daily. She denied using alcohol or drugs herself except for marijuana, which she used for anxiety and to sleep. She reported having received mental health treatment and medication for her bipolar diagnosis for the past 10 years and participating in counseling for new mothers of infants and children under three for the past three months. She planned to find a parenting program to address parenting older children (such as the minor). (*In re J.B.*, *supra*, C100564.)

Mother reported that, prior to commencement of these proceedings, she last saw the minor in July 2023 and blamed father for interfering with her attempts to see the minor. She claimed some of the missed visits could be attributed to the minor mixing up dates and times. The Department recommended that mother continue to engage in services and requested that the juvenile court dismiss the section 300, subdivision (b) allegation against her, sustain the petition as amended, adjudge the minor a dependent of the court, and find that placement with mother would be detrimental to the safety and well-being of the minor. (*In re J.B.*, *supra*, C100564.)

*Jurisdiction and Disposition Hearing*

The contested jurisdiction/disposition hearing commenced on January 5, 2024. Mother was not present but was represented by counsel. The juvenile court granted the Department's motion to dismiss the section 300, subdivision (b) allegation as to mother (leaving her unnamed in the petition) and sustained the petition as amended. Regarding disposition, the court admitted, without objection, mother's declaration in lieu of her testimony, as well as a memorandum from the County of San Mateo regarding mother's

4

behavioral health and recovery services. Mother's declaration stated among other things that: she was living in a family shelter but was in the process of obtaining a two-bedroom apartment; her boyfriend Ethan had a drinking problem but had been in treatment for four weeks, did not drink around her children, and did not currently live with her; Ethan had never been violent towards her; she experienced financial hardship which impacted her ability to visit the minor in person; she knew smoking in the home was unsafe for the minor and therefore no longer allowed smoking in the home; she was unaware of the substance abuse and "other issue" occurring in father's home leading to the minor's detention; she received treatment for her bipolar diagnosis for the past 10 years; and she did not pose a safety risk to the minor. (*In re J.B.*, *supra*, C100564.)

Mother's counsel argued that mother, as the (now) nonoffending, noncustodial parent, was seeking placement of the minor pursuant to section 361.2, subdivision (a), noting mother had found appropriate housing, was addressing her mental health needs, had not had any additional contacts with law enforcement, and had maintained contact with the minor over the years prior to his detention. Counsel argued that the minor's preference not to live with mother was outweighed by the long-term benefits he would gain from becoming an integrated member of a family. (*In re J.B.*, *supra*, C100564.)

The Department argued that, since mother lost custody of the minor in 2013, she had been largely absent from the minor's life except for sporadic visits. The minor had not seen mother in many months and, as a result of her absence in his life, the two did not share a strong bond. The Department expressed concern about mother's inability or unwillingness to protect the minor from Ethan's alcohol abuse and his inappropriate conduct during her visits with the minor, noting that she planned to live with Ethan in the near future. For those reasons, the Department argued it would be detrimental to place the minor with mother. Father joined in the Department's arguments, emphasizing mother's poor judgment in allowing Ethan to be intoxicated during visits with the minor. (*In re J.B.*, *supra*, C100564.)

5

The minor also joined in the Department's arguments and added that, given the lack of relationship between the minor and mother, the minor's age, and the minor's stated feelings towards his mother, it would be detrimental to force the minor to live with a parent "who he does not know very well or feel comfortable with," particularly when it was unknown how much contact the minor would have with Ethan. (*In re J.B.*, *supra*, C100564.)

The juvenile court found placement of the minor with mother would be detrimental to his safety, protection, or physical or emotional well-being. The court ordered the minor removed from father and continued in out-of-home placement, with reunification services and visitation for both parents. (*In re J.B.*, *supra*, C100564.)

*Mother's Prior Notice of Appeal*

Mother filed a timely notice of appeal of the juvenile court's January 5, 2024 orders. She claimed the disposition order was not supported by sufficient evidence that placing the minor with her would be detrimental to the minor's safety, protection or physical or emotional well-being. This court disagreed and affirmed the juvenile court's order. (*In re J.B.*, *supra*, C100564.)

*Six-Month Review Hearing*

In the meantime, the six-month review hearing commenced on June 26, 2024, at which time the juvenile court found mother made no progress toward alleviating or mitigating the causes necessitating the minor's placement and father made minimal progress. The juvenile court adopted the Department's proposed findings and orders, including continued reunification services for both parents.

In late-2024, the Department reported concerns regarding mother's behaviors. Kaitlyn Paris, mother's former psychiatric nurse from Coastside Clinic, reported she had significant concerns regarding mother's insight into her life, life patterns, and current relationship. Mother had reportedly been living in a family shelter and then, in May 2024, she moved to new housing (with Ethan) where she was receiving assistance with

6

case management and counseling. However, due to serious domestic violence perpetrated against her, Ethan was banned from the shelter. Mother opted to leave the shelter and sleep in her car with him. Ethan had previously been violent with mother, including striking mother while she was pregnant, and had reneged on his promises to get clean. Mother left him several times but then reconciled and was currently denying ever being in danger while with him. Paris described mother as "childlike," noting she did not have great judgment and "she needs a lot of handholding." Paris opined that mother could not currently care for the 12-year-old minor and a newborn and she continued to deny intimate partner violence by Ethan.

The Department also reported that mother demonstrated an inability to care for the minor beginning when he was two years old due to her substance abuse, intimate partner violence, codependency, lack of stability, and lack of insight in caring for the minor's basic needs. Mother was not engaged in and was resistant toward services despite ample support from the Department. She avoided addressing concerns raised by the Department and she was untruthful about her ongoing relationship with Ethan who previously engaged in domestic violence against her. She consistently denied any danger to the minor or that she was demonstrating any behaviors that could lead to domestic violence or criminal arrest while at the same time maintaining a relationship with Ethan. Mother stated she did not want to attend child and family team (CFT) meetings. She refused to participate in court ordered parenting classes (completing just three of six online sessions), individual therapy, or a psychological evaluation and she would not update a release of information for her current therapist stating she did not plan to discuss the minor during therapy. Mother's visits with the minor were sporadic, inconsistent, and "not in tune with" the minor, who preferred not to have video or telephone visits because mother did not ask him questions and tended to use the time talking about her own life. The Department recommended the court terminate the parents' reunification services and set the matter for a section 366.26 hearing.

7

Mother eventually submitted to a psychological evaluation conducted by Sidney Nelson, Ph.D. Dr. Nelson noted mother had been diagnosed with bipolar disorder many years ago but her psychological status had stabilized with the use of psychiatric medication and she did not exhibit any symptoms suggestive of a major mental disorder. Dr. Nelson opined that mother's mental health condition should not be a barrier to her benefiting from reunification services and recommended mother participate in a minimum of 15 individual counseling sessions addressing anxiety management, parental responsibility, and coping skills. Dr. Nelson also recommended mother participate in a substance abuse evaluation regarding her use of marijuana.

*Twelve-Month Review Hearing*

At the 12-month review hearing on December 12, 2024, mother requested placement of the minor in her custody and termination of the dependency or, alternatively, six additional months of reunification services. Mother informed the juvenile court she was no longer in a relationship with Ethan and he was no longer residing in the home. She provided documentation showing her participation in therapy and confirmed, via the psychological evaluation report, that she was consistent with her medication management. Mother's counsel argued the Department failed to include domestic violence as a component of mother's case plan or to provide mother with domestic violence services despite identifying that issue as a barrier to the minor returning to mother's home and citing it as part of the reason for terminating mother's reunification services.

The Department argued it provided mother with reasonable services even in the absence of a referral to domestic violence classes and mother's minimal and belated compliance in services did not cure the detriment associated with placing the minor in her care, making particular note of mother's inconsistent visitation. The Department further argued there was not a substantial probability that the minor would be returned to mother

8

within the statutory 18-month reunification period.  The court instructed the parties to provide additional briefing on the issues and continued the matter.

At the continued hearing on January 8, 2025, mother reported she was enrolled in two online parenting classes scheduled to begin later in the month and was provided with a referral and contact information for an intimate partner violence service provider, and she indicated she would be working on finding a virtual therapist specializing in women with a history of intimate partner violence.  The Department withdrew its objection to extending mother's reunification services.  Regarding mother's claim of unreasonable services, the juvenile court explained that jurisdiction was established on a finding of sexual abuse of the minor by or while in the care of father and not because of domestic violence in mother's home.  The court stated, "Although [domestic violence] services were not previously ordered and although mother previously denied any interest in such services, the Court finds that such services should be made reasonably available to mother prior to the cessation of reunification services ...."  The court continued the minor in out-of-home placement and ordered an additional six months of services for both parents, including domestic violence services for mother.

*Mother's Second Notice of Appeal*

Mother filed the notice of appeal in the instant case challenging the juvenile court's January 8, 2025 order.

*Eighteen-Month Review Hearing*

On September 16, 2025, after the initial appellate briefs were filed in this appeal, the juvenile court held the 18-month review hearing, at which time the court found mother made minimal progress toward alleviating or mitigating the causes necessitating placement of the minor, that return of the minor to either parent would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the minor, and the minor's out-of-home placement was still necessary and appropriate. The court terminated the parents' reunification services and set the matter for a section

9

366.26 hearing. The court also advised the parents to seek an extraordinary writ by filing, within seven days of the date of the hearing, a notice of intent to file a writ petition and a petition for extraordinary writ in order to preserve their right to review the court's order.

*Mother's Notice of Intent to File Writ Petition*

Mother filed a notice of intent to file a writ petition in the juvenile court on September 17, 2025, which notice was received by this court on September 19, 2025, and assigned case No. C104733.[2] The juvenile writ record was filed on October 13, 2025, and the parties were notified that any petition for extraordinary writ "must be served and filed on or before October 23, 2025" or the case would be immediately closed. On October 29, 2025, the clerk of this court sent a letter to the parties stating that, since mother "has not presented a petition for filing within the time specified, the above case has been closed."

## DISCUSSION

Mother contends the 12-month review order is not supported by sufficient evidence that placing the minor with her would be detrimental to the minor's safety, protection or physical or emotional well-being.[3] The Department argues the juvenile court's now final subsequent finding of detriment at the 18-month review hearing on September 16, 2025, renders mother's challenge to the previous detriment finding moot, as the court cannot grant her any effective relief. As we explain, we agree that mother's claim is moot.

---

[2] The Department's request for judicial notice of this court's case No. C104733 is hereby granted. (Evid. Code, § 452, subds. (d), (h).)

[3] To the extent mother claims she made an oral section 388 petition that was properly before the juvenile court "by the consent of all parties," we reject her claim due to her failure to assert that specific request below.

10

As a preliminary matter, mother confusingly asserts that the juvenile court's "implicit detriment finding" in the 12-month review order that mother was unable to provide adequate care for the minor was unauthorized and deprived her of due process of law because the Department did not plead or prove such basis for jurisdiction. Mother did not object to any "implicit" findings and instead seek express findings, nor did she raise any due process violation concerns in the juvenile court. Thus, mother has forfeited any such claims on appeal. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686 [A party may not assert theories on appeal which were not raised in the trial court].) Mother asks us to exercise our discretion to consider her claim despite her conceded failure to raise the argument below. We do so briefly, only to note that mother's claim is misguided. It is undisputed that the court's amendments striking allegations regarding mother in the dependency petition rendered mother a nonoffending, noncustodial parent thereafter. As such, the court applied section 361.2 to determine, at disposition and the 6-month, 12-month, and 18-month review hearings, whether to place the minor with mother. Section 361.2 provides in relevant part that the court "shall place the child with the parent [who desires to assume custody of the child] unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) We can find nothing in that statute, and mother does not provide any relevant authority, which requires that the Department first plead and prove any basis for a detriment finding as a basis for jurisdiction.

We also reject mother's misguided reliance on *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253 for the proposition that, over the entire period between disposition and the section 366.26 hearing, each and every detriment finding "including at disposition, as well as at each review hearing … is a precondition to terminating parental rights" and, by implication, required to be upheld on the merits, despite subsequent related detriment findings. *Cynthia D.* concluded that California's

11

dependency system comports with due process requirements because, by the time parental rights are terminated, the juvenile court has made multiple prior findings that the parent was unfit. (*Cynthia D.*, at pp. 254, 256.) It does *not* stand for the proposition that any flaw in one of the juvenile court's various detriment findings or any temporary return of the minor to the parent, during the parent's ongoing reunification efforts prohibits the court from considering termination of parental rights. Moreover, this appeal is not one from termination of parental rights. In any event, mother's claim is moot.

"A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [her] any effect[ive] relief." ' [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks. [Citation.] [¶] This rule applies in the dependency context. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ['the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error'].) A reviewing court must ' "decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding." ' [Citation.]" (*In re D.P.* (2023) 14 Cal.5th 266, 276.)

Here, mother challenges the juvenile court's detriment finding made at the 12-month review hearing. She seeks remand to the juvenile court with directions to place the minor in her care and hold a hearing to determine whether to terminate jurisdiction or, alternatively, remand with directions to reconsider whether to place the minor with her under the current circumstances and to specify a factual basis for that determination. " '[W]hen a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required. When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nevertheless.' " (*In re S.R.* (2025) 18 Cal.5th 1042, 1052, quoting *In re D.P.*,

12

*supra*, 14 Cal.5th at p. 283.) Mother's requested relief fails to demonstrate what, if any, consequence would be averted. Indeed, the juvenile court has already reconsidered whether to place the minor with her. At the 18-month review hearing, the court made a renewed finding, based on new, more current facts, that return of the minor to mother would be detrimental. And, as the Department aptly notes, in order to set aside the 12-month review findings and place the minor in mother's care, the court would necessarily have to set aside its findings and orders made at the 18-month review hearing. But, because mother did not file a writ petition challenging the 18-month review orders, those orders are final and not properly before the court. (*In re Amber U.* (1992) 3 Cal.App.4th 871, 881; Cal. Rules of Court, rule 8.490(b)(1)(A).) Therefore, no effective relief can be granted, and mother's claims are moot.

DISPOSITION

The appeal is dismissed.

/s/_____
BOULWARE EURIE, J.

We concur:

/s/_____
HULL, Acting P. J.

/s/_____
FEINBERG, J.

13